UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                                    Chapter 11

GOLYAN ENTERPRISES LLC,                                   Case No.: 23-41647-nhl

                         Debtor.
------------------------------------------------------------X

**ORDER UNDER SECTIONS 105, 363(a), 363(b), 363(f) and 363(m) OF THE
BANKRUPTCY CODE AND RULES 2002, 6004 AND 9004 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE: (I) AUTHORIZING DEBTOR TO SELL THE
ESTATE'S INTEREST IN THE REAL PROPERTY KNOWN AS 99-44 62ND AVENUE,
REGO PARK, NEW YORK 11374 TO THE HIGHEST AND BEST BIDDER AT AN
AUCTION SALE; (II) SCHEDULING A HEARING TO APPROVE SUCH SALE TO
THE HIGHEST AND BEST BIDDER; (III) APPROVING CERTAIN BIDDING
PROCEDURES; AND (IV) APPROVING THE MANNER AND EXTENT OF
<u>NOTICE OF SUCH AUCTION HEARING</u>**

UPON the motion (the "<u>Motion</u>") of Golyan Enterprises LLC, the debtor and debtor-in-

possession (the "<u>Debtor</u>"), seeking the entry of an order pursuant to sections 363(a), (b), (f) and

(m) of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rules 2002, 6004 and 9004

of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"): (i) authorizing the

Debtor's sale of the real property commonly known as 99-44 62nd Avenue, Rego Park, New York

11374, in the Borough of Queens, Block: 2107, Lot 24 (the "<u>Premises</u>") to the highest and/or best

offer received at an auction (with the right to designate a stalking horse bidder (a "<u>Stalking Horse

Bidder</u>")), free and clear of all liens, claims, encumbrances and other interests with such liens,

claims, encumbrances and other interests to attach to the proceeds of the sale and subject to

approval by the Court at a sale hearing; (ii) approving the ultimate sale of the Premises to the

successful bidder; (iii) approving the terms and conditions for submitting offers and bidding

procedures; (iv) approving the form and manner of notice with respect to the auction hearing (the

"<u>Sale Hearing</u>"); and (v) granting such other and further relief as this Court deems just and proper

under the circumstances; and the Motion having come on for a hearing before the Court on July 11, 2023, at which Avrum J. Rosen, Esq. (Counsel to Debtor), Mark A. Frankel, Esq. (counsel to Rego Park Lender LLC), Annie P. Kubic, Esq. and William C. Heuer, Esq. (counsel to The SGJ 2015 Irrevocable Trust and Joseph Golyan, individually and as trustee of the Trust), Dawn Kirby, Esq. (counsel to Receiver Joseph Misk), and Nazar Khodorovsky, Esq. (Office of the United States Trustee) appeared; and there being no opposition to the relief sought; and the Court, having considered the Motion and having determined that the Motion should be granted as provided herein; it is hereby

**ORDERED**, that the Debtor is authorized to sell the Premises free and clear of all liens, claims, encumbrances and other interests with such liens, claims, encumbrances and other interests to attach to the proceeds of sale with the same validity and with the same priority that existed prior to the sale, pursuant to sections 363(a), (b), and (f) of the Bankruptcy Code at public auction; and it is further

**ORDERED**, that the Debtor is hereby authorized to designate, on a later date, a stalking horse bidder for the sale of the Premises, subject to approval by the Court after notice and an opportunity for parties to be heard, which approval may be sought on shortened notice in advance of the auction; and it is further

**ORDERED**, that the Debtor is hereby authorized and empowered to take those steps necessary to sell the Premises as described herein, to the highest and/or best bidder free and clear of all liens, claims, encumbrances and other interests with such liens, claims, encumbrances and other interests to attach to the proceeds of sale with the same validity and with the same priority that existed prior to the sale; and it is further

**ORDERED**, that the Debtor shall cause the auction to be advertised on: (i) the website of MYC & Associates, Inc. ("MYC"); and (ii) a publication or publications as chosen by the Debtor in consultation with MYC, and MYC shall disclose the publication(s) used to advertise the auction in the report of sale filed with the Court; and it is further

**ORDERED**, that the following bidding procedures (the "Bidding Procedures") as set forth herein are approved:

i. The property to be sold at auction (the "Auction" or "Sale") is the Debtor's real property located at 99-44 62nd Avenue, Rego Park, New York 11374, in the Borough of Queens, Block: 2107, Lot 24 (the "Premises"). The seller of the Premises is Golyan Enterprises LLC, the debtor and debtor in possession (the "Debtor" and/or "Seller"). The Debtor's real estate broker and auctioneer ("Auctioneer") is MYC & Associates, Inc. ("MYC"), 1110 South Avenue, Suite 22, Staten Island, New York 10314; Telephone (347) 273-1258; Facsimile (347) 273-1358; email: sales@myccorp.com; and website: www.myccorp.com. The terms of sale are set forth below, and will be incorporated into the terms of a purchase and sale agreement (the "Terms and Conditions of Sale").

ii. The Auction will take place at a date and time to be determined by the Debtor in consultation with MYC, but absent further order of the Court shall take place not later than October 17, 2023. Under no circumstance shall the Sale take place earlier than sixty (60) days from the date of entry of the Order authorizing the Debtor to conduct the auction.

iii. Information regarding the Debtor's sale of the Premises can be obtained by contacting the Debtor's counsel or by contacting MYC or on the MYC website set forth in paragraph (i) above.

iv. The Auction may proceed with or without a Stalking Horse Offer (defined below).

v. If a Stalking Horse Offer is not approved before the Auction, in order to be considered at the Auction, any offer ("Offer" and "Bidder" who submits the Offer) must satisfy the following terms and conditions: (i) provide for a purchase price in an amount to be determined that is acceptable to the Debtor, in consultation with its professionals; (ii) be consistent with and subject to the Terms and Conditions of Sale; (iv) demonstrate, to the sole satisfaction of the Debtor and its counsel, evidence of Bidder's ability to conclude the transaction upon the Terms and Conditions of Sale, without delay; (v) not be conditioned upon the outcome of unperformed due diligence by the Bidder with respect to the Premises; (vi) Bidder must provide, at least two (2) days before the Auction, a certified check made payable to "Golyan Enterprises LLC DIP" in the amount of ten percent (10%) of the proposed purchase price as a down payment ("Qualifying Deposit").

vi.    <u>If a Stalking Horse Bidder is not approved before the Auction</u>, the Debtor, in consultation with its professionals, shall select, in the exercise of its discretion and business judgment, the "best and highest" offer to act as the opening bid at the Auction.  The opening best and highest bid shall be announced by the Debtor at the beginning of the Auction.  Once the Auction that was not subject to a Stalking Horse Offer has begun based upon the opening bid selected by the Debtor in consultation with its professionals, any subsequent competing offer shall provide for an aggregate consideration at least $25,000.00 more than the prior high bid (subject to the discretion of MYC to set a lower increment), and shall otherwise comply with all conditions of the Terms and Conditions of Sale.

vii.    The Debtor, in its sole discretion and in the exercise of its business judgment in consultation with its professionals, reserves the right to designate a stalking horse purchaser (the "<u>Stalking Horse Purchaser</u>" or "<u>Stalking Horse Bidder</u>") that offers a purchase price the Debtor deems to be a reasonable and valid purchase offer ("<u>Stalking Horse Offer</u>"). The Debtor shall use the Stalking Horse Offer as the reserve sale price, subject to better and higher offers.  The Debtor shall seek approval of this Court of any Stalking Horse Offer through a request for expedited relief subject to notice and an opportunity for parties to be heard.

viii.    <u>To the extent that a Stalking Horse Bidder is approved</u>, in order for any subsequent Offer to be considered a competing offer ("<u>Competing Offer</u>"), the Competing Offer must satisfy the following terms and conditions: (i) provide for a purchase in an amount to be determined (and subject to approval by the Court in connection with approval of a Stalking Horse Offer) that is more than the Stalking Horse Offer (the "<u>Initial Overbid</u>"); (ii) be substantially similar to the terms and conditions of the stalking horse agreement; (iii) the person and/or party submitting the Competing Offer ("<u>Competing Offeror</u>") must sign and agree to be bound by the Terms and Conditions of Sale; (iv) the Competing  Offeror shall have demonstrated, to the sole satisfaction of the Debtor and its counsel, evidence of its ability to conclude the transaction upon the Terms and Conditions of Sale, without delay; (v) shall not be conditioned upon the outcome of unperformed due diligence with respect to the Premises; (vi) shall provide, at least two (2) days before the Auction, a Qualifying Deposit; and (vii) in the case of any subsequent competing offer received from any party, such Competing Offer shall provide for an aggregate consideration at least $25,000.00 more than the  prior high bid (subject to the discretion of MYC to set a lower increment), and shall otherwise comply with all conditions of the Agreement.

ix.    In order to be permitted to bid on the Premises, at least two (2) days prior to the commencement of the Auction, and as a condition to be able to bid at the Auction, each prospective bidder must: (i) register with MYC; (ii) deliver to MYC the original signed Terms and Conditions of Sale; and (iii) tender the Qualifying Deposit, which amount shall serve as a good faith deposit against payment of the purchase price by such bidder in the

event that such bidder is determined to have made the highest and/or best bid ("Successful Bidder").

x.      Within forty-eight (48) hours after conclusion of the Auction, the Successful Bidder shall deliver to the Debtor a bank check in the amount needed to total ten (10%) percent of the successful bid, including the Qualifying Deposit (i.e., the aggregate amount provided will equal ten percent (10%) of the winning bid) (together with the Qualifying Deposit, the "Deposit"). The Successful Bidder for the Premises must execute, and thereby agree to be bound by: (i) the Terms and Conditions of Sale; and (ii) a Memorandum of Sale.  At the conclusion of the Auction, the Debtor will return the Qualifying Deposits to all bidders other than the second highest bidder ("Second Bidder"), whose Qualifying Deposit shall be held until such time as the sale to the Successful Bidder achieves a Closing (defined below).

xi.      The Successful Bidder, or its assigns, must close title ("Closing") to the Premises on a date ("Closing Date") that is within thirty (30) days following the date of entry of a Bankruptcy Court Order confirming the Sale, **time being of the essence**. The Closing Date may be extended solely by the Debtor in agreement with RPL. The Closing shall take place at a location that is to be determined by the Debtor.

xii.     The Bankruptcy Court, prior to the Closing, must enter an Order confirming the Sale for the Sale to take place.

xiii.    It is contemplated that the terms of these Bidding Procedures shall be incorporated into the Debtor's Plan of Liquidation and that the Closing will take place after the entry of an order confirming that Plan. In that event there may be no transfer taxes due. In the event that the Plan is not confirmed, the Successful Bidder, or its assigns, shall be responsible solely and shall pay any and all New York City, New York State, or other applicable real property transfer taxes incurred by the transfer of the Premises by the Debtor's estate, **plus any Buyer's Premium due to MYC** in the amount of four (4%) percent (which shall be a condition of closing) must be paid to MYC at closing, or held by the Debtor if the Court has not approved the compensation of MYC as of that date. In the event RPL is the Successful Bidder at the Auction by virtue of its right to Credit Bid, pursuant to MYC's retention, its compensation shall be limited to 1% of the Successful Bid together with its expenses as awarded by the Court pursuant to the Order retaining MYC, and to the extent that the bid exceeds the credit bid amount, additional commission of four percent (4%) of the amount above the credit bid.  The Successful Bidder, or its assigns, acknowledges that he, she, or it, will be responsible for the completion of any ACRIS forms, if required.

xiv.     In connection with the Closing and Closing Date, the Successful Bidder, or its assigns, is hereby given notice that **Time is of the Essence against the Successful Bidder, or its assigns, and the failure of the Successful Bidder, or its assigns, to close for any reason whatsoever (except as otherwise provided below) including his, her, or its failure to**

**pay the balance of the successful bid/purchase price on the Closing Date, will result in the Seller retaining the Deposit as liquidated damages and the termination of the Successful Bidder's, or its assigns', right to acquire the Premises under these Terms and Conditions of Sale**.  The Successful Bidder, or its assigns, shall be obligated to close title to the Premises and there is no contingency of any kind or nature that will permit the Successful Bidder, or its assigns, to cancel or avoid his, her, or its obligation under these Terms and Conditions of Sale other than the Debtor's inability to deliver insurable title to the Premises.  Further, the Successful Bidder, or its assigns, must demonstrate, to the satisfaction of the Debtor or the Bankruptcy Court, as the case may be, evidence of his, her, or its ability to conclude the transaction upon these Terms and Conditions of Sale, without delay. **Expenses incurred by the Successful Bidder, or its assigns, or any competing bidder concerning the performance of any due diligence, such as obtaining title reports or environmental inspections, shall be the sole financial responsibility of such bidder and under no circumstances shall the Debtor, or the Debtor's estate, or the Debtor's professionals, be liable or responsible for, or pay, such expenses.**

xv.  In the event that the Successful Bidder, or its assigns, fails to tender the balance of the successful bid/purchase price on the Closing Date, or otherwise perform his, her, or its obligations under the Terms and Conditions of Sale, the Debtor, at its sole option, shall be authorized to immediately negotiate the Qualifying Deposit of the Second Bidder and shall be further authorized to sell the Premises to the Second Bidder, or its assigns, without any further notice or approval of the Bankruptcy Court, without giving credit to the Second Bidder for the Deposit forfeited by the Successful Bidder, and upon such other terms and conditions as the Debtor, in consultation with its professionals, deems appropriate.  Should the Second Bidder, or its assigns, fail to close on the premises within twenty (20) days of receiving from the Debtor notice (at the address set forth on the bidder registration form), **Time Being of the Essence**, that said Second Bidder is now deemed the Successful Bidder, then the **Debtor shall be: (a) authorized to keep the Qualifying Deposit of the Second Bidder as liquidated damages**; and (b) authorized but not obligated to sell the Premises to the next highest bidder, without any further notice or approval of the Court.

xvi.  The Debtor shall convey the Premises by delivery of a Bargain and Sale Deed with Covenants Against Grantors Acts. The quality of title shall be that which a reputable title insurance company doing business in the State of New York is willing to approve and insure.  At the Debtor's option, it may arrange for the issuance of a title insurance policy by a reputable title company, if the Successful Bidder is unable to do so, at the sole cost and expense of the Successful Bidder.  The Debtor shall provide all documents reasonably required by the Successful Bidder's title company for them to "omit" any exceptions from the Successful Bidder's title policy.

xvii.  The Premises and any personal property included therewith is being sold and delivered **"AS IS", "WHERE IS", "WITH ALL FAULTS"**, without any representations, covenants, guarantees or warranties of any kind or nature whatsoever, and free and clear

of all monetary liens, claims and encumbrances of whatever kind or nature, such liens, claims, interests and encumbrances, if any, to attach to the proceeds of Sale in such order and priority as they existed immediately prior to the Sale Date, and subject to, among other things: (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; (e) environmental conditions; and (f) subject to all deed restrictions. By delivering their respective Qualifying Deposits, all bidders acknowledge that they have had the opportunity to review and inspect the Premises, the state of title thereof and laws, rules and regulations applicable thereto, and the form of the bargain and sale deed with convenances that the Debtor will execute to convey the Premises, and will rely solely thereon and on their own independent investigations and inspections of the Premises in making their bids. All bidders acknowledge that they have conducted their own due diligence in connection with the Premises and are not relying on any information provided by the Debtor, MYC or the Debtor's retained professionals.

xviii.   The Premises shall be delivered subject to any and all existing tenancies and occupancies.

xix.   Transfer/Recording Fees/Taxes may not be payable as it is contemplated that the terms of this Sale shall be incorporated into the Debtor's Plan of Liquidation and the closing shall take place after the Confirmation Order is entered. However, in the event that does not occur, the Purchaser is solely responsible for the payment of any and all Transfer/Recording Fees/Taxes/Mansion Taxes in connection with the sale of the Premises.

xx.   The Debtor, MYC and the Debtor's retained professionals have not made and do not make any representations or warranties with respect to the permissible uses of the Premises, the physical condition, rents, leases, expenses, operations, value of the land or buildings thereon, number of building lots, use or any other matter or thing affecting or related to the Premises or the Sale, that might be pertinent to the purchase of the Premises, including, without limitation: (a) the current or future real estate tax liability, assessment or valuation of the Premises; (b) the potential qualification of the Premises for any and all benefits conferred by or available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (c) the compliance or non-compliance of the Premises, in its current or any future state, with applicable current or future zoning ordinances or other land use law or regulation, or the ability of the owner of the Premises to obtain a change in the zoning or use, or a variance in respect to the Premises; (d) the availability of any financing for the purchase, alteration, rehabilitation or operation of the Premises from any source, including, but not limited to, any state, city, local government or federal government or institutional lender; (e) the current or future use of the Premises; (f) the present and future condition and operating state of any and all machinery or equipment in the Premises and the present or future structural and physical condition of

any building thereon or its suitability for rehabilitation or renovation; (g) the ownership or state of title of any personal property in the Premises; (h) the presence or absence of any laws, ordinances, rules or regulations issued by any governmental authority, agency or board and any violations thereof; (i) any present or future issues concerning subdivision or non-subdivision of the Premises; or (j) the compliance or non-compliance of the Premises with environmental laws and the presence or absence of underground fuel storage tanks, any asbestos or other hazardous materials anywhere in the Premises.  Each bidder hereby expressly agrees and acknowledges that no such representations have been made, except for the representation as to open permits. The Debtor and its retained professionals shall not be liable or bound in any manner by expressed or implied warranties, guaranties, promises, statements, representations or information pertaining to the Premises, made or furnished by the Debtor or any real estate broker, agent, employee, servant or other person or professional representing or purporting to represent the Debtor unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth in a signed writing by the Debtor.

xxi.    Neither the Debtor, MYC, the Debtor's retained professionals, nor the Debtor's estate, are liable or responsible for the payment of fees of any broker or agent that has not been retained by an order of the Bankruptcy Court.

xxii.    These Terms and Conditions of Sale will be read into the record at the Auction, and/or specifically incorporated by reference at the Sale of the Premises.  By making a bid for the Premises, all bidders shall be deemed to have acknowledged having read, and understand, these Terms and Conditions of Sale and have agreed to be bound by them.

xxiii.    The Debtor shall be a party to the Sale of the Premises exclusively in its capacity as debtor in possession in bankruptcy. If the Debtor is unable to deliver title to the Premises in accordance with these Terms and Conditions of Sale for any reason whatsoever, its only obligation will be to refund the Deposit to the Successful Bidder (or Second Bidder) and upon such refund the Successful Bidder (or Second Bidder) will have no recourse or claim against the Debtor, the Debtor's retained professionals, or the Debtor's estate.

xxiv.    Subject to the required consent from RPL, the Debtor reserves its right to withdraw the Premises from the Sale, either prior or subsequent to the auction, for any reason whatsoever, as it deems necessary or appropriate, and any pre-auction withdrawal of the Debtor's Premises from the Auction will be filed on the electronic case docket in this case.

xxv.    RPL shall have the right to credit bid at the Auction for a price that includes an amount agreed to by the Debtor for a credit bid pursuant to Section 363(k) of the Bankruptcy Code. The Credit Bid shall be allowed in the amount of any allowed pre-petition claim of RPL.

xxvi.    Customary Purchase Price adjustments may be made, if agreed upon, at the Closing. Possession will be delivered at Closing.

xxvii.  The Sale and all documentation relating thereto shall be subject to the laws of the State of New York

xxviii. Nothing contained in the Terms and Conditions of Sale shall supersede or alter any provisions of Title 11, United States Code ("Bankruptcy Code") and/or of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") or otherwise interfere with the jurisdiction of the Bankruptcy Court.  To the extent of any conflict between the Bankruptcy Code and/or the Bankruptcy Rules and the Terms and Conditions of Sale, the Bankruptcy Code and/or the Bankruptcy Rules shall govern.  All of the terms and conditions set forth in these Terms and Conditions of Sale are subject to modification as may be directed by the Debtor, or by the Bankruptcy Court.  The Debtor reserves the right to modify these Terms and Conditions of Sale at the Sale, or thereafter, to maintain consistency with the provisions of the Bankruptcy Code, Bankruptcy Rules, and/or orders of the Bankruptcy Court, and any pre-auction change to the terms of sale will be filed on the electronic case docket in this case.

xxix.   The Sale of the Premises is subject to confirmation by the Bankruptcy Court. The Debtor or the Debtor's attorney shall notify the Successful Bidder whether the Sale is confirmed. Any disputes concerning the Sale shall be determined by the Bankruptcy Court.  By participating in the Sale, all bidders consent to the jurisdiction of the Bankruptcy Court to determine such disputes arising in the Debtor's pending case. The Successful Bidder agrees to cooperate with the Debtor in obtaining Section 363(m) protections in this Order by submitting an appropriate affidavit as to the required elements of that statute.  If the Successful Bidder fails to qualify for such a finding by the Court, Successful Bidder shall close without those protections.

xxx.    **By making a bid for the Premises, all bidders shall be deemed to have acknowledged having read, and understand, these Terms and Conditions of Sale and have agreed to be bound by them.**

**AND IT IS FURTHER ORDERED**, that MYC & Associates, Inc. ("MYC") shall conduct an auction sale on **October 17, 2023 at 10:00 a.m. (prevailing Eastern Time)** either live or by videoconference using the Zoom platform or other comparable videoconference platform with bidders to be advised by MYC as to how they may access the videoconference; and it is further

**ORDERED**, that the Court will hold a hearing on **October 17, 2023 at 2:30 p.m.** before the Honorable Nancy Hershey Lord to determine whether to confirm the Sale of the Premises to the Successful Bidder; and it is further

**ORDERED**, that the October 17, 2023 hearing shall not be held in person but shall be held virtually. If the Hearing is to be in person, a subsequent Notice of Hearing will be served by Debtor's counsel.  Those parties wishing to appear at the hearing shall register using eCourt Appearances. If you have a CM/ECF account, you may access eCourt Appearances in the "Utilities" menu after logging into CM/ECF. If you do not have a CM/ECF account, you may access eCourt Appearances on the Court's website at https://ecf.nyeb.uscourts.gov/cgi-bin/nyebAppearances.pl. To register, please provide your name, address, e-mail address, telephone number on the hearing date, and if appropriate, the party that you represent. Please be sure to register at least one business day before your hearing. You will receive instructions on how to access the remote hearing via e-mail two business days before the hearing. On your hearing date, please connect at least ten minutes before your scheduled hearing time and keep your audio and video on mute until your case is called.

**AND IT IS FURTHER ORDERED**, that, notwithstanding anything in this Order or the Motion to the contrary, all liens, claims, encumbrances and other interests to the extent of their validity and in their order of priority shall remain on the Premises until the Closing Date; and it is further

**ORDERED**, that, on the Closing Date, the Debtor shall pay (or direct payment of) all undisputed liens on the Premises for real property taxes, water and sewer charges and other related charges, in full, including, without limitation, all accrued post-petition interest, fees and other applicable charges on same ("Tax Liens"), provided, however, that if RPL is the Successful Bidder

by virtue of a credit bid of any portion of the purchase price, RPL shall pay the Tax Liens in full, together with the commission of MYC (which shall be held by the Debtor if MYC's commissions are not approved by the Court by that date), in cash on the Closing Date; and it is further

**ORDERED**, that, the proceeds of sale are to be held by the Debtor in a segregated account; and it is further

**ORDERED**, that, other than as set forth in this Order, no funds, other than ordinary and customary closing expenses and costs, are to be disbursed without further order of the Court; and it is further

**ORDERED**, that the Debtor is hereby authorized and empowered to take such actions as may be necessary and appropriate to implement the terms of this Order; and it is further

**ORDERED**, that the Debtor shall serve a copy of this Order by regular mail, or if not available, by electronic mail, upon all creditors, any party having filed a notice of appearance and demand for service in this case, parties in interest and any party that has expressed an interest in the Premises, by not later than five (5) days after the date of entry of this Order, and shall file an affidavit of service attesting to service of the Order; and it is further

**ORDERED**, that the Court retains jurisdiction to resolve any disputes arising or related to this Order and to interpret, implement and enforce the provisions of this Order.

Dated: July 26, 2023
      Brooklyn, New York

Nancy Hershey Lord
United States Bankruptcy Judge