**Law Offices of Avrum J. Rosen, PLLC**
38 New Street
Huntington, New York 11743
(631) 423-8527
Avrum J. Rosen, Esq.
Nico G. Pizzo, Esq.

*Counsel to Golyan Enterprises LLC*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                                                    Chapter 11

GOLYAN ENTERPRISES LLC,                          Case No.: 23-41647-nhl

                                    Debtor.
------------------------------------------------------------X

## <u>DEBTOR'S DISCLOSURE STATEMENT</u>

### <u>DISCLAIMER</u>

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS INCLUDED HEREIN FOR THE PURPOSES OF SOLICITING ACCEPTANCES OF THE CHAPTER 11 PLAN OF LIQUIDATION GOLYAN ENTERPRISES LLC, THE DEBTOR AND DEBTOR-IN-POSSESSION, DATED JULY 31, 2023, AS MAY BE AMENDED, MODIFIED OR SUPPLEMENTED FROM TIME TO TIME, AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN. A COPY OF THE PLAN IS ANNEXED HERETO AS EXHIBIT "A". NO SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN MAY BE MADE EXCEPT PURSUANT TO SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE.

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR CONDITIONAL APPROVAL BUT HAS NOT YET BEEN APPROVED BY THE COURT.**

**ALL HOLDERS OF CLAIMS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. THE PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN AND THE EXHIBITS ANNEXED TO THIS DISCLOSURE STATEMENT. IN THE EVENT OF ANY CONFLICTS BETWEEN THE DESCRIPTIONS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE TERMS OF THE PLAN, THE TERMS OF THE PLAN SHALL GOVERN.**

THIS DISCLOSURE STATEMENT WAS PREPARED IN ACCORDANCE WITH SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE AND RULE 3016(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, AND NOT NECESSARILY IN ACCORDANCE WITH OTHER NON-BANKRUPTCY LAW.

CERTAIN STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING WITH RESPECT TO PROJECTED CREDITOR RECOVERIES AND OTHER FORWARD-LOOKING STATEMENTS ARE BASED ON ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL BE REFLECTIVE OF ACTUAL OUTCOMES. FORWARD-LOOKING STATEMENTS ARE PROVIDED IN THIS DISCLOSURE STATEMENT PURSUANT TO THE SAFE HARBOR ESTABLISHED UNDER THE PRIVATE SECURITIES REFORM ACT OF 1995 AND SHOULD BE EVALUATED IN THE CONTEXT OF ESTIMATES, ASSUMPTIONS, UNCERTAINTIES, AND RISKS DESCRIBED HEREIN.

AS TO CONTESTED MATTERS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT WILL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS DISCLOSURE STATEMENT ALSO WILL NOT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN, THE DEBTOR. EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS URGED TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN ON SUCH HOLDER'S CLAIM OR EQUITY INTEREST.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN, AND THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION STATED SINCE THE DATE HEREOF.

# I
# INTRODUCTION

On May 11, 2023 (the "Filing Date"), Golyan Enterprises LLC, the debtor and debtor-in-possession (the "Debtor") filed a voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court").

On _____ __, 2023, the Bankruptcy Court approved this Disclosure Statement as containing adequate information of a kind and in sufficient detail to enable a hypothetical holder

of an allowed claim against the Debtor to make an informed judgment whether to accept or reject the Debtor's Plan of liquidation dated July 31, 2023 (the "Plan").[1] APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT, HOWEVER, CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN.

The purpose of this Disclosure Statement is to provide holders of Claims entitled to vote to accept or reject the Plan with adequate information about: (i) certain historical events relating to the Debtor and its assets; (ii) the Debtor's Chapter 11 Case; (iii) the Plan; (iv) the rights of holders of Claims and Equity Interests under the Plan; and (v) other information necessary to enable each Holder of a Claim entitled to vote on the Plan to make an informed judgment as to whether to vote to accept or reject the Plan.

The following are exhibits to this Disclosure Statement:

Exhibit "A" – The Plan;

Exhibit "B" – Bid Procedures Order;

Exhibit "C" – Cash Collateral Order; and

Exhibit "D" – Schedules filed by the Debtor.

## A.  <u>Overview</u>

The Plan is a liquidating plan as all assets of the Debtor will be liquidated to pay Allowed Claims against the Estate. This will be accomplished by both the sale of various assets, and the litigation and monetization of causes of action.

As emphasized throughout the Plan, the Debtor's primary goal is to market and sell the Debtor's real property commonly known as 99-44 62nd Avenue, Rego Park, New York 11374, in the Borough of Queens, Block: 2107, Lot 24 (the "Premises"). The Premises is improved by a six

---

[1] Unless otherwise defined herein, all capitalized terms contained herein will have the meanings ascribed to them in the Plan.

story elevatored residential apartment building containing 62 apartments and a parking garage. The Premises have been under the control of the Receiver since at least September of 2020.

Pursuant to the terms of the Cash Collateral Order (Exhibit "C"), the Debtor has regained control of the Premises and its business, and will complete a review of the Receiver's books and records to determine whether the Debtor's business and/or property have been harmed by any inaction or action of the Receiver. The Debtor will pursue any and all causes of action against parties, if appropriate and recoverable under statute or case law, for damages and harm to the Premises. The Debtor has also retained a new Managing Agent and Broker. The Managing Agent will stabilize operations and seek to improve the rent roll and cure all violations that might impact the value of the Premises and the sale process. The Broker will seek to obtain the best possible price for the Premises under the timetable agreed to by the Debtor and the Lender as set forth in the Cash Collateral Order.

**B.**   **Voting Procedures**

As set forth in more detail in Article III of this Disclosure Statement, certain holders of Claims may be entitled to vote to accept or reject the Plan. For each holder of a Claim entitled to vote, the Debtor has enclosed, along with a copy of this Disclosure Statement, among other things, a ballot and voting instructions regarding how to properly complete the ballot and submit a vote with respect to the Plan. Holders of more than one Claim will receive an additional ballot for each Claim. The individual ballots must be used to vote each individual Claim. For detailed voting instructions, please refer to the specific voting instructions and the ballot enclosed with this Disclosure Statement.

All completed ballots must be actually received no later than 5:00 p.m. (Eastern) on _____ __, 2023 (the "Voting Deadline") by regular mail, overnight mail, hand delivery, electronic mail, or facsimile to:

| If by regular mail, overnight mail or hand delivery: | If by electronic mail: | If by facsimile |
|---|---|---|
| Law Offices of Avrum J. Rosen, PLLC<br>Attn: Avrum J. Rosen, Esq.<br>38 New Street<br>Huntington, New York 11743 | arosen@ajrlawny.com | (631) 423-4536 |

If you are a holder of a Claim that is entitled to vote on the Plan and you (i) did not receive a ballot, (ii) received a damaged ballot or (iii) lost your ballot, or (iv) if you have questions concerning this Disclosure Statement, the Plan, or the procedures for voting with respect to the Plan, please contact Nico G. Pizzo, Esq. at (631) 423-8527 or npizzo@ajrlawny.com.

**BALLOTS RECEIVED AFTER THE VOTING DEADLINE MAY NOT BE COUNTED.**

**C.    Summary of Distribution and Voting Eligibility**[2]

The following summary table briefly outlines the classification and treatment of Claims and Equity Interests in the Debtor under the Plan, and the voting eligibility of the holders of such Claims and Equity Interests. Nothing set forth in the table below shall be deemed an admission by the Debtor as to the existence, validity, priority or amount of any claim asserted against the Debtor's Estate. All rights to object to Claims are fully reserved and preserved.

| Class | Designation | Impaired | Entitled to Vote |
|---|---|---|---|
| 1 | Allowed RPL Secured Claim | Yes | Yes |
| 2 | General Unsecured Claims | Yes | Yes |
| 3 | Allowed Equity Interests | No | No |

---

[2] This summary is qualified in its entirety by reference to the Plan. Statements as to the rationale underlying the treatment of Claims and Equity Interests under the Plan are not intended to, and will not, waive, compromise or limit any rights, claims, defenses, or causes of action in the event that the Plan is not confirmed. You should read the Plan in its entirety before voting to accept or reject the Plan.

In accordance with the section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims and United States Trustee Fees have not been classified. Section III of this Disclosure Statement provides a more detailed description of the treatment of Claims and Equity Interests under the Plan.

Pursuant to the Bankruptcy Code, only classes of claims that are "impaired" under the terms and provisions of a plan are entitled to vote to accept or reject such plan.

**D.**     <u>**Confirmation Under Section 1129(b)**</u>

The Bankruptcy Code permits confirmation of a Chapter 11 plan if all voting classes vote in favor of the plan pursuant to section 1129(a).  The Bankruptcy Code also permits confirmation of a Chapter 11 plan notwithstanding the rejection of such plan by one or more impaired classes of claims or equity interests pursuant to section 1129(b). Under section 1129(b) of the Bankruptcy Code, a Chapter 11 plan that has been rejected by an impaired, voting class of creditors may nonetheless be confirmed by a bankruptcy court if it does not "discriminate unfairly" and is "fair and reasonable" with respect to each rejecting class.

If a Class of Claims entitled to vote on the Plan rejects the Plan, the Debtor reserves the right to amend the Plan and to request confirmation of the Plan pursuant to section 1129(a) or (b) of the Bankruptcy Code, or both.

**E.**     <u>**The Confirmation Hearing**</u>

In accordance with section 1128 of the Bankruptcy Code, the Bankruptcy Court shall schedule a hearing, pursuant to a separate notice or Order of the Bankruptcy Court, to consider approval of the adequacy of the Disclosure Statement (the "<u>Disclosure Statement Hearing</u>") before the Honorable Nancy Hershey Lord. **DUE TO COVID RESTRICTIONS, AS OF THE DATE OF THIS DISCLOSURE STATEMENT, THE BANKRUPTCY COURT IS CONDUCTING**

**ALL HEARINGS VIRTUALLY USING ECOURT APPEARANCES. PARTICIPANTS MAY REGISTER FOR THE VIRTUALLY HEARING WITH ECOURT APPEARANCES AT** https://www.nyeb.uscourts.gov/registering-remote-hearing-appearance-using-ecourt-appearances. **Should this format change, you will receive written notification of said change.**

F.    **Important Dates**

Please take note of the following important dates and deadlines with respect to the Plan.

| Event | Date and Time |
|---|---|
| Voting Deadline | by 5:00 p.m. (Eastern) |
| Plan Confirmation Objection Deadline | by 5:00 p.m. (Eastern) |
| Ballot Summary Deadline: | by 5:00 p.m. (Eastern) |
| Deadline to Reply to Plan Objections: | by 5:00 p.m. (Eastern) |
| Hearing on Disclosure Statement: | |
| Hearing on Confirmation of the Plan: | |

**II**

**EVENTS LEADING UP TO THE CHAPTER 11 CASE
AND HISTORY OF THE CHAPTER 11 CASE**

A.    **The Debtor's Business and Ownership Structure**

The Debtor is a limited liability company formed and existing under the laws of the State of New York. The Debtor's principal asset is the Premises located in Rego Park, New York and the Debtor maintains an office in Great Neck, New York. The Debtor is a real estate investment company formed in or around 2008 and its business involves the purchase, ownership, management, and rental of real estate for profit.

The Debtor's founding members were Faraidoon Daniel Golyan ("Daniel"), Joseph Golyan ("Joseph") and Bijan Golyan ("Bijan" and together with Daniel and Joseph, the "Founding Members"). The Founding Members are also brothers. Daniel and Joseph each owned a 33.33% interest in the Debtor and Bijan owned a 33.34% interest in the Debtor.

On November 25, 2015, each of the Founding Members created separate irrevocable trusts pursuant to the laws of the State of New York. Thereafter, each of the Founding Members transferred a 17.33% interest of the Debtor to the respective irrevocable trusts. The trusts were created as follows:

(i)     Daniel created the "NDBE 2015 Irrevocable Trust" (the "NDBE Trust");
(ii)    Joseph created the "MARA 2015 Irrevocable Trust" (the "MARA Trust"); and
(iii)   Bijan created the "SGJ 2015 Irrevocable Trust" (the "SGJ Trust").

Bijan is deceased, having passed away on June 19, 2020. By order of Surrogate Margaret C. Reilly, entered in April 2021, Bijan's wife, Pranses Golyan ("Pranses"), was appointed as the administrator of Bijan's estate for all purposes. However, the Debtor's operating agreement only permits the successor in interest to the deceased member to receive the economic right to receive distributions until the transferee is a fully substituted member in accordance with the operating agreement. Under the Debtor's operating agreement, the voting interests of the non-deceased members will be proportionally increased until such time as the transferee of the economic rights becomes a fully substituted member. Upon information and belief, Pranses was not determined to be a fully substituted member of the Debtor.

**B.      The Loan and Mortgage**

On or about May 8, 2008, the Debtor, for good and valuable consideration, executed and delivered to Popular Bank f/k/a Banco Popular North America ("Popular Bank") an Amended and Restated Mortgage Note (together with any amendments and/or modifications, the "Note") to evidence its obligations for a loan in the principal amount of $6,500,000.00 (the "Loan").

As security for payment of Note, the Debtor executed, acknowledged and delivered to Popular Bank a mortgage modification and extension agreement dated May 8, 2008 (together with any amendments and/or modifications, the "Mortgage"). Each of the Founding Members are

limited guarantors of the Note.

Various modifications were made to the Mortgage including multiple extensions of the maturity date, which fully matured on or about December 10, 2018. On or about March 8, 2019, Popular Bank assigned all of its right, title and interest in and to the Note and Mortgage to 99-44 62nd Ave NY LLC, and then 99-44 62nd Ave NY LLC assigned all of its right, title and interest in and to the Note and Mortgage to RPL on November 22, 2019.

## C.    The Foreclosure and Appointment of the Receiver

On July 26, 2019, a foreclosure action was commenced by 99-44 62nd Ave NY LLC, as assignee of Popular Bank, by the filing of a summons and complaint (the "Complaint") against the Debtor, the Founding Members and other defendants in the Supreme Court of the State of New York, Queens County, Index Number 701980/2020 (the "Foreclosure Action").[3] The Foreclosure Action was brought to foreclose on the Note and Mortgage burdening the Premises (99-44 62nd Avenue, Rego Park, New York 11374 (Block 2107, Lot 24)).

By Order dated February 14, 2020 and entered February 27, 2020 in the Foreclosure Action, the state court appointed the Receiver as temporary receiver of the Premises. Barton Schwartz of New York City Management LLC was retained as property manager (the "Property Manager"). However, allegedly due to Covid 19 Restrictions, the Receiver did not take over operation of the premises until September of 2020.

By Order Granting Judgment and Appointing Referee to Compute dated September 22, 2022 and entered on September 23, 2022 (the "Order of Reference"), the state court in the Foreclosure Action: (i) granted a default judgment and/or summary judgment in favor of Plaintiff

---

[3]  The additional defendants include METROPCS, LLC, METROPCS New York, LLC, METROPCS Communications, Inc., T-Mobile Holdings GMBH, The People of the State of New York, New York State Department of Taxation and Finance, "John Doe #1" through "John Doe #20".

and against the defendants; and (ii) appointed William T. Driscoll, Esq. as referee (the "Referee") to compute the amount due to the Plaintiff upon the Note and the Mortgage and to determine whether the Premises should be sold in one or more parcels.

Pursuant to the Order of Reference, the Referee has: (i) computed the amount due to the Plaintiff, as of October 19, 2022, to be in the sum of $9,853,406.59, plus interest from that date; and (ii) found that the Premises should be sold in one parcel. On May 8, 2023, Justice Lance P. Evans entered his decision granting the RPL's motion for (i) an order confirming the Referee's Report (ii) a judgment of foreclosure and sale, and (iii) an order awarding RPL legal fees; and ordered RPL to submit a judgment/order. The Debtor filed this Chapter 11 case before the Judgment of Foreclosure and Sale was entered by that Court.

**D.    The Debtor's Commencement of the Chapter 11 Cases**

On May 11, 2023 (the Filing Date herein), the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code.

Prior to the Filing Date, the Debtor had not been in control of operating its business due to the appointment of a receiver in the prepetition foreclosure action described above. However, as is more fully described below, the Debtor is now in control of its property and operating its business, in accordance with orders entered by the Bankruptcy Court. No trustee, examiner or committee has been appointed in this case.

**E.    Major Post Petition Events**

The Debtor prepared a detailed bankruptcy petition and a comprehensive set of schedules and statements, which were filed with the bankruptcy petition. Immediately, upon the filing of the case, counsel for the Debtor demanded a turnover of the Premises and all accounts from the Receiver. The Debtor also appeared for a section 341(a) Meeting of Creditors, and its attorneys

conducted numerous conversations with counsel for creditors, interested parties and the Office of the United States Trustee.

1. **The Motions to Control the Premises**

Generally, upon commencement of a bankruptcy case, a pre-petition receiver relinquishes control in accordance with Bankruptcy Code section 543. Here, however, RPL filed a motion to excuse compliance with section 543 of the Bankruptcy Code [Dkt. No. 13] on May 19, 2023, seeking an order excusing compliance by the Receiver with section 543(a) and (b) of the Bankruptcy Code, pursuant to section 543(d)(1). The Debtor timely filed its opposition to RPL's motion on June 6, 2023 [Dkt. No. 26].

On May 22, 2023, the Debtor filed its application directing the Receiver to comply with sections 543(a) and (b) of the Bankruptcy Code and to turnover all property of the estate including, but not limited to: (1) all funds collected on behalf of the Debtor; (2) a complete accounting of any and all funds collected on behalf of the Debtor; (3) copies of all financial documents including: (i) Signature bank statements and/or any other bank statements maintained on behalf of the Debtor; (ii) rent rolls; (iii) collection efforts; (iv) service contracts; (v) accounts receivable; (vi) accounts payable; (vii) utility deposits; (viii) original leases for the residential and commercial tenants; (ix) any pending landlord and tenant actions; and (x) a list of security deposits and account information of where they are maintained; (4) keys to each unit at the premises; (5) proof of real property insurance; (6) contract(s) with any management company; and (7) a complete list of employee records, including but not limited to salary and pay statements [Dkt. No. 16]. RPL timely filed an objection to the Debtor's motion on June 6, 2023.

Although a hearing was initially scheduled for both motions, due to agreement between the Debtor and RPL regarding management and control of the Debtor's business and property,

implemented pursuant to the terms of a cash collateral agreement, both motions were initially adjourned and then ultimately withdrawn on the record at the July 11, 2023 hearing. In the absence of the motions and pursuant to the Cash Collateral Order, the Receiver is in the process of complying with his obligations for the turnover to the Debtor.

2.    **RPL's 2004 Motion**

On May 25, 2023, RPL filed a motion pursuant to Rule 2004 of the Bankruptcy Rules, seeking an order directing the examination of Golyan Enterprises, LLC, Faraidoon Golyan, Josef Golyan, the Mara 2015 IRR Trust, the NDBE 2015 IRR Trust, the SGJ 2015 IRR Trust, Shirin Golian, Choice Management Services, Inc., Pari Golyan, and Daniel Tubian, and for the production of the documents from those entities [Dkt. No. 22]. The Debtor timely filed its opposition to RPL's 2004 motion on June 6, 2023 [Dkt. No. 27].

Pursuant to the agreement between the Debtor and RPL implemented through the cash collateral agreement, RPL adjourned its 2004 motion.

3.    **The Cash Collateral Motion**

As a result of successful negotiations, the Debtor and RPL have agreed upon terms and conditions for the Debtor's consensual use of cash collateral.  As a result, on or about June 26, 2023, the Debtor and RPL entered into a consensual cash collateral agreement and proposed interim order to authorize the Debtor's use of cash collateral, as well as a resolution of the motions concerning the Receiver, Rule 2004 discovery and the retention of a managing agent and a broker.

The Debtor filed its application by expedited relief seeking, *inter alia*, authorization to use the cash collateral on June 26, 2023 [Dkt. No. 37]. The proposed relief was approved by the Court at the July 11, 2023 hearing, and the interim Cash Collateral Order is annexed hereto as Exhibit "C". Encompassed within the scope of the Cash Collateral Order is a resolution of all of the various

motions noted above, as well as (i) timelines for the filing of a consensual plan and related documents, (ii) removal of the Receiver, (iii) milestones for a sale process, and (iv) the selection of a Managing Agent and a Broker.

4.      **The Motion for 363 Relief**

On June 30, 2023, the Debtor filed it an application for expedited relief, seeking, inter alia, entry of an order authorizing the Debtor' sale of the Premises to the highest and/or best offer received at an auction (with the right to designate a stalking horse bidder) free and clear of all liens, claims, encumbrances and other interests with such liens, claims, encumbrances and other interests to attach to the proceeds of the sale and subject to approval by the Court at a sale hearing [Dkt. No. 40]. The motion was filed under the agreed terms of the cash collateral agreement and with the consent and approval of the proposed bidding terms from RPL, the Office of the United States Trustee and interested parties.

The proposed relief was approved by the Court at the July 11, 2023 hearing, and the Order is annexed hereto as Exhibit "B".

## III

## THE PLAN OF REORGANIZATION

THE FOLLOWING IS A BRIEF SUMMARY OF THE PLAN. THE PLAN REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT AND CREDITORS ARE URGED TO CONSULT WITH THEIR COUNSEL IN ORDER TO FULLY UNDERSTAND THE PLAN AND TO MAKE AN INFORMED JUDGMENT CONCERNING IT. THE PLAN GOVERNS OVER ANY DISCREPANCY IN THIS SUMMARY.

The Plan shall be funded through a combination of: (i) sale proceeds from the sale of the Premises; (ii) rent and other amounts that might be collected during the Bankruptcy Case, and (iii) proceeds recovered from any causes of action.

A.    **Designation of Classes**

**Class 1:**  Class 1 shall consist of the Allowed RPL Secured Claim.

**Class 2:**  Class 2 shall consist of all Allowed General Unsecured Claims.

**Class 3:**  Class 3 shall consist of all Allowed Equity Interests.

B.    **Treatment of Classes under the Plan**

**Class 1:**        RPL asserts that as of the Petition Date it is owed not less than approximate amount of $10,470,070.00 plus accrued interest, costs, and fees by the Debtor. RPL and the Debtor are in dispute with regard to the allowable amount of RPL's Secured Claim. The Debtor expressly reserves its rights in that regard to file an Objection to the amount of RPL's Claim. The Plan shall provide for payment of the Allowed Secured Claim of RPL either in full or up to the amount of the Net Sale Proceeds from the sale of the Premises less any "Carve Outs" set forth in the Cash Collateral Order. RPL retains its right to credit bid its Allowed Secured Claim at the Sale. This Class is impaired and is entitled to vote on the Plan.

**Class 2:**        Class 2 of the Plan consists of General Unsecured Claims. The Debtor anticipates that General Unsecured Claims, when and if to the extent Allowed, shall receive a pro rata distribution of the Net Sale Proceeds from the sale of the Premises after payment of all Allowed Administrative, Priority and Secured Claims to be paid by the Debtor within 60 days after the Effective Date, with interest at the federal judgment rate in effect on the Confirmation Date, if the Claims are paid in full. The last date for creditors to file claims is August 11, 2023.  Class 2 Claimants are impaired, and are eligible to vote on the Plan.

**Class 3:**         In the event there are sufficient Sale Proceeds to pay all prior classes in full, Class 3 Claimants shall retain all existing pre-petition Equity Interests in the Debtor effective as of the Effective Date. In the event that there are insufficient funds for same, Class 3 claimants shall not retain their interests and are deemed to reject the Plan. If there are sufficient assets left after the payments of the Sale Proceeds, Class 3 Claimants are unimpaired, are not eligible to vote on the Plan and are deemed to have accepted the Plan.

**C.** **Treatment of Unclassified Claims under the Plan**

Pursuant to section 1123(a) of the Bankruptcy Code, the Plan does not classify Administrative Claims, Priority Tax Claims or United States Trustee Fees, all of which shall be paid in full as required by section 1129(a)(9) and the Cash Collateral Order.

**1.** **Allowed Administrative Claims of the Debtor and the Debtor's Professionals**

Under the Plan, the Allowed Administrative Claims of the Debtor and the Debtor's Professionals are unimpaired and shall be paid in full by the Debtor within 30 days after the Effective Date or upon the approval of the professional fee application, even if estimates fall below actual awarded amounts, or such later date after approval by the Court after notice and a hearing.

**2.** **Allowed Administrative Claims Other than the Debtor and the Debtor's Professionals**

Under the Plan, Allowed Administrative Claims (other than Claims of the Debtor and the Debtor's Professionals), to the extent that any such Claims exist, are unimpaired and shall be paid in full by the Debtor within 30 days after the Effective Date. The Debtor anticipates reviewing the alleged administrative claim of the Receiver to determine if the Administrative Claim is Allowed as of the Effective Date.

3.    **Priority Tax Claims**

Under the Plan, all outstanding real estate tax claims and related charges are treated as Allowed Priority Tax Claims for purposes of the Plan, and shall be paid in full as required by section 1129(a)(9) with statutory interest.

4.    **United States Trustee Fees**

The Debtor is current on the payment of quarterly fees charges by the United States Trustee. To the extent not otherwise paid, the Debtor shall pay all accrued United States Trustee Fees, together with any interest thereon, until the Chapter 11 Case is closed by entry of a final decree.

D.    **Means for Implementation of the Plan**

The Plan shall be funded through a combination of: (i) sale proceeds from the sale of the Premises; (ii) rents and other amounts that may be collected during the Bankruptcy Case, and (iii) proceeds recovered from any causes of action. The Plan will be implemented as follows:

a)    The Court enters the Confirmation Order, that Order becomes a Final Order, and the Plan shall go "effective" (Effective Date);

b)    The Debtor's duly retained broker, MYC & Associates, Inc., will conduct an auction either with, or without, a stalking horse bidder on October 17, 2023 pursuant to the Bidding Procedures set forth in the Bid Procedures Order (Exhibit "B");

c)    The Debtor will continue to investigate the claims of the Receiver and pursue any and all causes of action against parties, if appropriate and recoverable under statute or case law, for damages and harm to the Premises, including, but not limited to objecting to any Claims as deemed appropriate by the Debtor; and

d)    Prior to the filing date, the Founding Members had commenced litigation, each asserting claims against the other, relating in part to the Debtor. Some of the claims asserted by

the Founding Members may be derivative in nature, and inure to the benefit of the estate (the "Founding Members' Litigation").  To the extent that there are claims that have not been paid in full from proceeds of the sale of the Premises and the resolution of the causes of action against the Receiver, the Founding Members will continue such litigation and all derivative claims in that litigation, belonging to the estate, shall inure to the benefit of the estate to pay claims against the estate. In addition to those claims, the Debtor will commence any and all causes of action of the estate as is necessary to pay its claims.

e)      Exemption from Certain Transfer Taxes and Fees. To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any transfer of the Premises pursuant to the Plan and any mortgage or instrument recorded in connection with such transfer (or refinance of the existing mortgage) will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents will forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

E.    **Administrative Expense Bar Date**

A date establishing an Administrative Expense Bar Date will be included as part of the Confirmation Order or by separate Order of the Court, which will be served upon all creditors and other parties-in-interest. All requests for payment of Administrative Expenses that accrued on or before the Confirmation Date must be filed with the Bankruptcy Court by the Administrative Expense Bar Date, except for Professional Fee Claims. Any holder of an Administrative Expense

which fails to file a timely request for the payment of an Administrative Expense will forever be barred, estopped and enjoined from asserting such Administrative Expense against the Debtor and Reorganized Debtor. The Debtor may object to the allowance of any Administrative Expense Claim.

**F.**     **Professional Fee Bar Date**

A date establishing a Professional Fee Bar Date will be included as part of the Confirmation Order or by separate Order of the Court, which will be served upon all creditors and other parties-in-interest. Each Person seeking an award by the Bankruptcy Court of Professional Fees must file with the Bankruptcy Court and serve on Reorganized Debtor its final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by the Professional Fee Bar Date. Any holder which fails to file a timely request for the payment of a Professional Fee will forever be barred, estopped and enjoined from asserting such Professional Fee against the Debtor and Reorganized Debtor.

**G.**     **Vesting of Assets**

On the Effective Date, any assets (if not sold) of the Debtor will revest to the Debtor.

**H.**     **Assumption and Rejection of Executory Contracts and Unexpired Leases.**

Except as otherwise provided herein, the Debtor shall file a list of assumed and assigned Executory Contracts and Unexpired Leases in the Plan Supplement which shall then be deemed either assumed and assigned to the Purchaser of the Property, or rejected pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease: (1) was assumed or rejected previously by the Debtor; (2) expired or terminated pursuant to its own terms before the Effective Date; or (3) is the subject of a motion to reject pending on the Confirmation Date. Entry of the Confirmation Order shall constitute a Final Order

approving the assumptions or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code. The Management Agreement is expressly rejected in the Plan pursuant to the terms of the Settlement Agreement.

All assumed Executory Contracts and Unexpired Leases shall remain in full force and effect for the benefit of the assignee, and be enforceable by the assignee in accordance with their terms, notwithstanding any provision in such assumed Executory Contract or Unexpired Lease that prohibits, restricts, or conditions such assumption, assignment, or transfer. Any provision in the assumed Executory Contracts and Unexpired Leases that purports to declare a breach or default based in whole or in part on commencement or continuance of this Chapter 11 Case or any successor cases shall be deemed unenforceable.

As all of the tenants in the building have leases due to their status as statutory tenants, the Debtor believes, that it lacks the power to reject those leases and that the tenants' possessory rights pass through the Bankruptcy case unaffected.   However, to the extent that the Debtor has the right to reject those leases, it reserves its rights to do so in the Plan Supplement.

I.      **Effect of Confirmation; Discharge of Claims; Confirmation Injunction; Release; Exculpation**

On the Confirmation Date, the terms of the Plan will bind all Holders of all Claims against, and Equity Interests in, the Estate, whether or not such Holders accepted the Plan. The rights afforded under the Plan and the treatment of all Claims under the Plan will be in exchange for a complete satisfaction, discharge and release of Claims of any of any nature whatsoever, against the Estate or any of its assets or property. Except as otherwise provided herein, on the Confirmation Date, all such Claims against the Estate shall be satisfied, discharged and released in full, and all Persons or entities are precluded and enjoined from asserting against the Estate, the Debtor and/or

its successors or their assets, any other or further claims based upon any act, omission, transaction or other activity of any kind or nature that occurred before the Confirmation Date.

Under the Plan, the Estate will retain any and all claims and Causes of Action belonging to the Debtor and its Chapter 11 Estate, whether arising before or after the Filing Date, regardless of whether such claims and Causes of Action arise under the Bankruptcy Code. The Debtor may pursue any and all such Causes of Action, except for derivative claims asserted in the Founding Members' Litigation, which shall be pursued by the Founding Members for the benefit of the estate to the extent that claims remain unpaid. The Plan expressly provides that, unless any claims and Causes of Action against an Entity are expressly and unambiguously waived, relinquished, exculpated, released, compromised, or settled in the Plan or in a Bankruptcy Court order, the Debtor expressly reserves all Causes of Action, for later prosecution, settlement, or adjudication and no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or a consequence of entry of the Confirmation Order, occurrence of the Effective Date, or consummation of the Plan.

The Plan provides that, effective on the Effective Date, all Persons who have held, hold or may hold Claims or Equity Interests[4] are enjoined from taking any of the following actions, except for the reservation of rights of all claims and actions expressly reserved in the agreement dated March 31, 2023, as to claims reserved between the Founding Members of the Debtor (i.e., the Founding Members' Litigation), and its exhibits [Dkt. No. 9], against or affecting the Released Parties, the Debtor, the Estate, the Premises or any other assets of the Estate with respect to such

---

[4] The Plan shall not in any way or to any degree release any claims or rights of any Founding Member against the other.

Claims or Equity Interests, except as otherwise set forth in the Plan and other than actions brought to enforce any rights or obligations under the Plan or appeals, if any, from the Confirmation Order:

    i.    commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against the Released Parties, the Debtor, the Estate, the Premises or any other assets of the Estate;

    ii.    enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree, or order against the Released Parties, the Debtor, the Estate, the Premises or any other assets of the Estate;

    iii.    creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Released Parties, the Debtor, the Estate, the Premises or any other assets of the Estate;

    iv.    asserting any set-off, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation against the Released Parties, the Debtor, the Estate, the Premises or any other assets of the Estate; and/or

    v.    proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan.

Except as otherwise set forth, **the Plan provides that, effective as of the Effective Date, the Released Parties are released from all Claims, Causes of Action, and demands of any nature whatsoever, in law and in equity, that any creditor of the Debtor had, has, or may hereafter have against the Released Parties arising prior to the Effective Date. Except as otherwise provided herein and in section 1141 of the Bankruptcy Code, all Persons shall be precluded and enjoined from asserting against the Released Parties, their assets or properties, or against any property that is distributed, or is to be distributed under the Plan, any other or further Claim upon any acts or omissions, transactions, or other activity of any kind or nature that occurred prior to the Effective Date.  Any claims that may exist in favor of a Founding Member against another Founding Member, are expressly reserved and are not released pursuant to the Plan.**

The Plan provides that the Released Parties (collectively, the "**Exculpated Parties**") will not have or incur any liability to any Person for any act taken or omission occurring on or after the Filing Date in connection with this Case, including but not limited to:

    (a)    the commencement and administration of the Case;

    (b)    the formulation, preparation, dissemination, implementation, confirmation, consummation, or administration of: (i) the Plan (including soliciting acceptances or rejections thereof); and/or (ii) the Disclosure Statement; and

    (c)    any Distributions made pursuant to the Plan.

Nothing in this section shall: (a) affect the liability of any Exculpated Party that otherwise would result from any act or omission to the extent that the act or omission is determined in a Final Order to have resulted from fraud, willful misconduct, gross negligence, or criminal conduct; or (b) limit liability pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct; or (c) modify the terms of the Sale Stipulation; or (d) affect the reservation of rights expressly reserved in the agreement dated March 31, 2023, and its exhibits [Dkt. No. 9].

**J.**    **Claims and Distribution Matters**

All Claims in this Case will be reviewed, and to the extent necessary and appropriate, the Debtor will file objections to certain Claims. The Bankruptcy Court will retain jurisdiction to adjudicate objections to claims brought by the Debtor, including any settlements or compromises of such Claims. Debtor reserves all of its rights to object to Claims. To the extent that the Debtor intends to object to the claim of RPL, it shall file that Objection at least thirty (30) days prior to the hearing set for Confirmation of the Plan and shall only hold any Disputed portion of said claim in Reserve pending a determination of said Objection.

The Plan provides that any other objections to Claims, to the extent not already commenced by the Debtor, must be filed and served by the Debtor no later than the sixtieth (60th) day after the Effective Date (or the next business day if the 60th day is a holiday or weekend day), or within such other extended time period as may be requested (with such application or motion being made prior to the expiration of the period) by the Debtor and fixed by the Bankruptcy Court. The Debtor shall hold in reserve: (a) 100% of any Disputed Claim that is an Administrative Claim or a Priority Claim; and/or (b) the Pro Rata portion of the General Unsecured Claims Reserve of any Disputed Claim that is a General Unsecured Claim until such Claim is resolved by a Final Order or settled. Should the amount reserved by the Debtor on account of the Disputed Claim exceed the amount required to satisfy the Disputed Claim, any excess will be distributed in accordance with the Plan.

If, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, the Debtor shall, within fifteen (15) days after the later of: (x) the date on which the Claim becomes an Allowed Claim or as soon thereafter as is practicable; and (y) when claims in the same Class are paid, pay to the Holder of such Allowed Claim the amount that such Holder would have been entitled to receive under the Plan if such Claim had been an Allowed Claim on the Effective Date.

All Distributions under the Plan to any Holder of an Allowed Claim shall be made at the address of such Holder as set forth in the filed or scheduled Claim unless the Debtor has been notified in writing of a change of address. For a period of ninety (90) days subsequent to any Distributions made under the Plan, Unclaimed Property will be held by the Debtor for the Holders of Allowed Claims which have failed to claim such Distribution, and will be released by the Debtor and delivered to such Holder, without interest, upon presentation and proper proof by such Holder to the Debtor (in the sole and absolute discretion of the Debtor) of its entitlement thereto. At the end of the ninety (90) days subsequent to any Distributions made under the Plan, all Unclaimed

Property will be deposited by the Debtor with the Clerk of the Court, notwithstanding any provision to the contrary in the Plan, or any federal or state escheat laws to the contrary.

The Plan provides that, if a Distribution to be made to a given Holder of an Allowed Claim would be $5.00 or less, notwithstanding any contrary provision of the Plan, no such Distribution will be made to such Holder. Any unclaimed or retained Distributions shall be disbursed by the Debtor pursuant to the terms of the Plan. Distributions may be made by the Debtor by wire, electronic transfer, check or such other method as the Debtor deems appropriate under the circumstances. No payments of portions of a Dollar will be made. Whenever any payment of a portion of a Dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole Dollar (up or down).

The Plan provides that the Debtor may withhold from any Distribution under the Plan any amount which must be withheld for taxes payable by the Entity entitled to such Distribution to the extent required by applicable law. As a condition to making any Distribution under the Plan, the Debtor may request that the Holder of any Allowed Claim provide such Holder's taxpayer identification number and such other certification as may be deemed necessary to comply with applicable tax reporting and withholding laws.

Notwithstanding any other provision of the Plan, each Entity receiving a Distribution pursuant to the Plan will have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any governmental unit on account of such Distribution, including income, withholding and other tax obligations.

## K.    <u>Retention of Jurisdiction</u>

The Plan provides that the Bankruptcy Court (or the United States District Court for the Eastern District of New York, as the case may be) shall have and retain exclusive jurisdiction of

matters arising out of, and related to the Case and the Plan under, and for the purposes of, sections 105(a), 1127, 1142 and 1144 of the Bankruptcy Code and for, among other things, the following purposes:

i.    to hear and determine all Claims (including Administrative Claims) concerning the classification, allowance or disallowance of any such Claim, if any;

ii.   to hear and determine any and all adversary proceedings, Causes of Action, claims of the Estate, applications, and contested matters, whether filed or commenced before or after the Effective Date;

iii.  to hear and determine all Claims arising out of any agreement entered into by the Debtor after the Filing Date, if any;

iv.   to hear and determine applications for the assumption or rejection of Executory Contracts, if any, and allowance of Claims resulting therefrom;

v.    to hear and determine any settlement and/or compromise pursuant to Bankruptcy Rule 9019 concerning any of the foregoing;

vi.   to alter, modify and amend the Plan pursuant to section 1127 of the Bankruptcy Code, or to remedy any defect, cure any omissions or reconcile any inconsistency in the Plan or Confirmation Order as may be necessary or advisable to carry out the purpose and intent of the Plan and to the extent authorized by the Bankruptcy Code or Bankruptcy Rules;

vii.  to make such orders *ex parte* or upon application, and to hear and adjudicate any settlements or disputes concerning the provisions of the Plan, or to enforce and/or implement the terms of the Plan;

viii. to hear and determine such other matters as may be provided for in the Confirmation Order of the Bankruptcy Court, and for the purposes set forth in section 1127(b) and section 1142 of the Bankruptcy Code or as contained in Rules 1019 and 3020(d) of the Bankruptcy Rules;

ix.   to hear and determine all applications for compensation;

x.    to hear and determine matters concerning local, state and federal taxes in accordance with sections 345, 505 and/or 1146 of the Bankruptcy Code;

xi.   to enter a Final Order or decree concluding the Case or an order of substantial consummation;

xii.    to hear and determine that distributions are accomplished as provided in the Plan; and/or

xiii.    to determine other matters contained in the Confirmation Order or Plan or that is authorized under the provisions of the Bankruptcy Code including, without limitation, to hear and determine matters pertaining to the Refinance and the Auction of the Property.

**IV**

**<u>FEASIBILITY</u>**

The funding of the Plan through a combination of: (i) sale proceeds from the sale of the Premises; (ii) rents and other amounts collected during the Bankruptcy Case, and (iii) proceeds recovered from any causes of action will allow the Debtor make all distributions contemplated under the Plan. As a result, the Debtor submits that the Plan is feasible.

**V**

**<u>REQUIREMENTS FOR CONFIRMATION OF THE PLAN</u>**

**A.**    **<u>Confirmation Hearing</u>**

The Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing to consider confirmation of the Plan. The Confirmation Hearing shall be scheduled by the Bankruptcy Court to be held before the Honorable Nancy Hershey Lord. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing.

**B.**    **<u>Objections to Confirmation</u>**

The Bankruptcy Court has directed that objections, if any, to Confirmation of the Plan be in writing, filed with the Bankruptcy Court with a courtesy copy to chambers of the Honorable Nancy Hershey Lord, with proof of service and such objections served on or before such date as set forth in an additional notice or Order of the Bankruptcy Court. Objections must be served upon:

(i) counsel to the Debtor, Law Offices of Avrum J. Rosen, PLLC, 38 New Street, Huntington, New York, 11743, Attn.: Avrum J. Rosen, Esq. (arosen@ajrlawny.com); (ii) the Office of the United States Trustee, 201 Varick Street, Suite 1006, New York, New York 10004, Attn.: Nazar Khodorovsky, Esq. (Nazar.khodorovsky@usdoj.gov); and (iii) Rego Park Lender LLC, c/o Backenroth Frankel & Krinsky, LLP, 488 Madison Avenue, Floor 23, New York, New York 10022, Attn.: Mark Frankel, Esq. (mfrankel@bfklaw.com). Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

**C.     Acceptance of the Plan**

Acceptance of the Plan requires that each impaired Class of Claims accepts the Plan, with certain exceptions discussed below. Thus, acceptance of the Plan is tested on a class-by-class basis. Classes of Claims that are not impaired under the Plan are deemed to have accepted the Plan. Under the Plan, all of the classes are unimpaired, not entitled to vote and are presumed to have accepted the Plan.

**D.     Confirmation of the Plan**

In order to confirm the Plan, the Bankruptcy Code requires that the Bankruptcy Court make a series of determinations concerning the Plan, including: (i) that the Plan has classified Claims in a permissible manner; (ii) that the contents of the Plan comply with the technical requirements of the Bankruptcy Code; (iii) that the Plan has been proposed in good faith; and (iv) that disclosures concerning the Plan have been made which are adequate and include information concerning all payments made or promised in connection with the Plan and the Case. The Debtor believes that all of these conditions have been or will be met.

# VI

## ALTERNATIVES TO THE PLAN AND OTHER CONSIDERATIONS

### A.     Alternatives to the Plan

The Debtor believes that the Plan provides creditors with the earliest and greatest possible value that can be realized on their respective Claims. The principal alternatives to confirmation of the Plan are: (i) confirmation of alternative plans submitted by another party-in-interest; or (ii) conversion of the Case to Chapter 7 of the Bankruptcy Code.

In this case, no other party filed an alternative plan.

The Debtor believes that a conversion to Chapter 7 would not be in the best interest of creditors. As described in section B below (the "Best Interests of Unsecured Creditors"), liquidation of the Debtor's assets under Chapter 7 of the Bankruptcy Code would not generate a greater distribution to creditors than that which is proposed under the Plan. Conversion under Chapter 7 of the Bankruptcy Code would also entail the appointment of a Chapter 7 trustee and the incurrence of additional administrative fees and expenses, which would adversely affect any distributions to Claimants.

The Debtor believes that confirmation of the Plan is preferable to the alternatives described above because the Plan will yield the greatest distributions to holders of Allowed Claims.

### B.     Best Interests of Unsecured Creditors

Notwithstanding acceptance of the Plan by Classes of Claims, in order to confirm the Plan, the Bankruptcy Court must independently determine that the Plan is in the best interests of all Classes of Claims. The "best interests" test requires that the Bankruptcy Court find that the Plan provides to each member of each impaired Class of Claims a recovery that has a present value at least equal to the present value of the distribution which each such Person would receive from the

debtor's estate if its assets were instead distributed by a trustee under Chapter 7 of the Bankruptcy Code. The Debtor believes that the Plan satisfies the "Best Interests Test" with respect to all Classes of Claims as all Claimants are fully unimpaired.

In addition, the cost of converting the Chapter 11 Case to one under Chapter 7 would include the fees of a Chapter 7 trustee, as well as those of the Chapter 7 trustee's counsel and other professionals that may be retained by the Chapter 7 trustee, unpaid expenses incurred during the Chapter 11 Case. These Claims, and such other Claims as might arise in the liquidation or result from the Debtor's Chapter 11 Case, would be paid from the Debtor's assets before its assets would be available to pay Allowed Unsecured Claims and may result in substantially less of a recovery by the Chapter 7 trustee for the creditors of this estate.

THE DEBTOR BELIEVES THAT THE PLAN PROVIDES THE GREATEST AND EARLIEST POSSIBLE RECOVERY ON ACCOUNT OF CLAIMS AND THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS.

C.    **Liquidation Analysis**

As part of the Chapter 11 process, section 1129(a)(7) of the Bankruptcy Code requires that a Bankruptcy Court determine that a Chapter 11 plan provides, with respect to each class, that each holder of a claim or an equity interest in such class either (i) has accepted the plan or (ii) will receive under the plan value that is not less than the amount that such holder would receive if the debtor had liquidated under Chapter 7 of the Bankruptcy Code. In this case, since the Plan is a liquidating Plan which is designed to bring the highest and best price for the Premises, a liquidation analysis is not required.

## VII

## RECOMMENDATION OF THE DEBTOR

The Plan and this Disclosure Statement were drafted and submitted on behalf of the Debtor. As such, the Debtor strongly supports the Plan and believes that Confirmation of the Plan provides creditors with the best possible recovery in the shortest possible time.

## VIII

## ADDITIONAL INFORMATION

Requests for information and additional copies of this Disclosure Statement, the Plan, and any other materials or questions relating to the Plan and this Disclosure Statement should be directed to the Debtor's counsel, Law Offices of Avrum J. Rosen, PLLC, 38 New Street, Huntington, New York 11743, Attn.: Avrum J. Rosen, Esq., or by telephone at: (631) 423-8527, or by email to: arosen@ajrlawny.com during regular business hours.

## IX

## TAX CONSEQUENCES

Creditors should consult with their own tax advisor concerning any tax related implications and: (i) any deductions which may be applicable to them as bad debt deductions, or (ii) income tax implications based upon forgiveness of debt, if applicable, based upon the provisions of the Plan.

Pursuant to IRS Circular 230 Notice: To ensure compliance with IRS Circular 230, holders of Claims or Equity Interests are hereby notified that: (i) any discussion of U.S. federal tax issues contained or referred to in this Disclosure Statement is not intended or written to be used, and cannot be used, by holders of Claims or Equity Interests for the purpose of avoiding penalties that may be imposed on them under the Tax Code; (ii) such discussion is written in connection with the promotion or marketing by the Debtor, on behalf of the Debtor's Estate, of the transactions or

matters addressed herein; and (iii) holders of Claims or Equity Interests should seek advice based upon their particular circumstances from an independent tax advisor.

## X

## AMENDMENTS, MODIFICATION, WITHDRAWAL OR REVOCATION OF THE PLAN

The Debtor reserves the right, in accordance with section 1127 of the Bankruptcy Code, with the written consent of RPL (as to any modifications materially affecting RPL's treatment under the Plan), to amend or modify the Plan provided the Bankruptcy Court approves such modification, if required.

With the written consent of RPL, the Debtor may withdraw or revoke the Plan prior to the Confirmation Date. If such a withdrawal or revocation occurs, or if Confirmation does not occur, the Plan will be null and void. In such event, nothing contained in the Plan will constitute a waiver or release of any Claim by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtor.

## XI

## CONCLUSION

The Debtor believes the Plan is in the best interest of creditors of this estate.

Dated: July 31, 2023
      Huntington, New York

**Law Offices of Avrum J. Rosen, PLLC**

By:    */s/ Avrum J. Rosen*
      Avrum J. Rosen, Esq.
      Nico G. Pizzo, Esq.
      38 New Street
      Huntington, New York 11743
      Tel: (631) 423-8527
      arosen@ajrlawny.com
      npizzo@ajrlawny.com

      *Counsel to Golyan Enterprises LLC*
      *Debtor and Debtor-in-Possession*

Dated: July __, 2023
      Great Neck, New York

By:    _____
      Faraidoon Daniel Golyan
      Manager of Golyan Enterprises, LLC