UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:                                                          Chapter 11

GOLYAN ENTERPRISES LLC,                          Case No.: 23-41647-nhl

                              Debtor.
-------------------------------------------------------------X


## **DEBTOR'S THIRD AMENDED PLAN OF LIQUIDATION**



**LAW OFFICES OF AVRUM J. ROSEN, PLLC**
Counsel to Golyan Enterprises LLC Debtor and Debtor-in-Possession

Avrum J. Rosen, Esq.
Nico G. Pizzo, Esq.

38 New Street
Huntington, New York 11743
Telephone: (631) 423-8527

February 26, 2024

# TABLE OF CONTENTS

Page

INTRODUCTION………………………………………………………………………………...1

OVERVIEW OF THE PLAN………………………………………………………………...………………………1

ARTICLE I DEFINITIONS……………………………………………………………………………….2

ARTICLE II DESIGNATION OF CLASSES…………………………………………………….6

ARTICLE III TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN……………………………………………………..6

ARTICLE IV MEANS FOR FUNDING AND IMPLEMENTATION OF THE PLAN, AND BIDDING PROCEDURES………………………………………………………………………...9

ARTICLE V EXECUTORY CONTRACTS AND UNEXPIRED LEASES………………….................................................................................................14

ARTICLE VI LIQUIDATION ANALYSIS ………………………………………………………15

ARTICLE VII EFFECT OF CONFIRMATION; INJUNCTION………………………………………………………………………………15

ARTICLE VIII CLAIM AND DISTRIBUTION MATTER……………………………………17

ARTICLE IX RETENTION OF JURISDICTION……………………………………………………………………….....19

ARTICLE X GENERAL PROVISIONS…………………………………………………...21

ARTICLE XI AMENDMENTS, MODIFICATIONS AND REVOCATION…………………….....................................................................................24

**Law Offices of Avrum J. Rosen, PLLC**
38 New Street
Huntington, New York 11743
(631) 423-8527
Avrum J. Rosen, Esq.
Nico G. Pizzo, Esq.

*Attorneys for the Debtor and Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In re:                                                             Chapter 11

GOLYAN ENTERPRISES LLC,                          Case No.: 23-41647-nhl

                                    Debtor.
----------------------------------------------------------X

## DEBTOR'S THIRD AMENDED PLAN OF LIQUIDATION

### INTRODUCTION

Golyan Enterprises LLC, the debtor and debtor-in-possession (the "<u>Debtor</u>"), proposes this third amended plan of liquidation (the "<u>Plan</u>") pursuant to Chapter 11 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

### OVERVIEW OF THE PLAN

The Debtor is committed to liquidating its non-exempt assets and is filing this Plan to pay creditor's allowed claims to the extent they exist. The Debtor marketed and sold the Debtor's real property, and will prosecute causes of action that will enable the Debtor make all distributions contemplated under the Plan. The Plan provides for a distribution to general unsecured creditors, and if paid in full, then with interest at the federal judgment rate in effect on the date the Plan is confirmed.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

# ARTICLE I

## DEFINITIONS

For purposes of this Plan and Disclosure Statement simultaneously filed by the Debtor, the following terms shall have the respective meanings set forth below (such meanings to be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires):

**1.01** "Administrative Expense" or "Administrative Claim" means any cost or expense of administration of the Case under section 503(b) of the Bankruptcy Code that is entitled to priority under section 507(a)(2) of the Bankruptcy Code including, without limitation, any actual and necessary costs and expenses of preserving the Estate.

**1.02** "Allowed" means that portion of a Claim or an Equity Interest that: (a) has been timely filed by virtue of a proof of claim or interest with the Bankruptcy Court and is liquidated in an amount and has not been objected to; or (b) has been listed in the Schedules as being neither contingent, unliquidated nor disputed and has not been objected to; or (c) has been allowed by a Final Order of the Bankruptcy Court.

**1.03** "Allowed RPL Secured Claim" means the allowable amount of RPL's Secured Claim  which is deemed to be not less than $10,470,070.00 as of the Petition Date plus accrued interest, costs, and fees.

**1.04** "Bankruptcy Code" means Title 11 of the United States Code.

**1.05** "Bankruptcy Court" means the United States Bankruptcy Court for the Eastern District of New York.

**1.06** "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, and any amendments or supplements thereto.

**1.07** "Bid Procedures Order" means the order of the Bankruptcy Court authorizing, *inter alia*, the Debtor to sell the Premises and approving certain bidding procedures [docket number 49].

**1.08** "Broker" means the Debtor's retained real estate broker and auctioneer, MYC & Associates, Inc.

**1.09** "Case" means the Chapter 11 case of the Debtor now pending in the Bankruptcy Court under case number 23-41647-nhl.

**1.10** "Cash Collateral Order" means the interim order of the Bankruptcy Court authorizing, *inter alia*, the Debtor to use cash collateral [docket number 48], as amended and/or resubmitted and entered by the Bankruptcy Court from time to time.

**1.11**    "<u>Causes of Action</u>" means any and all litigations, actions, suits, claims for relief, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and Claims, whether known or unknown, filed or unfiled, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, and whether asserted or assertable directly or derivatively, in law, equity or otherwise, whether arising prior to or after the Filing Date.

**1.12**    "<u>Chapter 11</u>" means Chapter 11 of the Bankruptcy Code.

**1.13**    "<u>Claim</u>" means a claim as defined in section 101(5) of the Bankruptcy Code.

**1.14**    "<u>Claimant</u>" means the holder of a Claim.

**1.15**    "<u>Class</u>" means a group of Claims consisting of Claims which are substantially similar to each other as classified pursuant to the Plan.

**1.16**    "<u>Confirmation Date</u>" means the date upon which the Confirmation Order is entered in the Bankruptcy Court.

**1.17**    "<u>Confirmation Hearing</u>" means the hearing to be held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider Confirmation of the Plan.

**1.18**    "<u>Confirmation Order</u>" means an order of the Bankruptcy Court confirming the Plan in accordance with the provisions of the Bankruptcy Code (as may be amended, modified or supplemented).

**1.19**    "<u>Debtor</u>" means Golyan Enterprises LLC.

**1.20**    "<u>Debtor Professionals</u>" means the attorneys, accountants, auctioneers, brokers, managers, consultants, other professionals, agents, investigators, expert witnesses, consultants, and advisors as necessary to discharge the duties of the Debtor under the Plan (each in their capacity as such).

**1.21**    "<u>Disclosure Statement</u>" means the Debtor's Disclosure Statement dated July 31, 2023 (as may be amended, modified for supplemented) to accompany the Plan, and all annexes, schedules or exhibits attached thereto or referenced therein.

**1.22**    "<u>Disputed Claim</u>" means a Claim or a request for payment of an Administrative Expense, as the case may be, as to which as of the Effective Date: (a) a proof of claim or a request for payment of an Administrative Expense, as the case may be, has been filed with the Bankruptcy Court or deemed filed under applicable law or order of the Bankruptcy Court; and (b) an objection has been or will be timely filed; and (c) such objection has not been: (i) withdrawn, (ii) overruled or denied in whole or part by a Final Order, or (iii) granted in whole or in part by a Final Order.

**1.23**    "<u>Distributions</u>" means the distributions made to Holders of Allowed Claims and Allowed Administrative Expenses pursuant to the Plan.

**1.24**    "<u>Effective Date</u>" means the date upon which the sale of the Premises closes.

**1.25**    "<u>Entity</u>" has the meaning set forth in section 101(15) of the Bankruptcy Code.

**1.26**    "<u>Equity Interests</u>" means the holders of equity of the Debtor.

**1.27**    "<u>Estate</u>" means the estate of the Debtor created under section 541 of the Bankruptcy Code.

**1.28**    "<u>Executory Contract</u>" means each agreement, contract or unexpired lease to which the Debtor is a party and which is executory within the meaning of section 365 of the Bankruptcy Code, including any modifications, amendments, addenda or supplements thereto, and any ancillary agreements related thereto.

**1.29**    "<u>Filing Date</u>" means June 17, 2022, the date the Debtor's Chapter 11 Case was commenced.

**1.30**    "<u>Final Order</u>" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction, as entered on the docket of such court which, not having been reversed, modified, amended, or stayed, and the time for seeking review of which by way of appeal, petition for certiorari, motion for reargument and rehearing or other review having expired, and as to which no appeal, petition for certiorari, motion for reargument and rehearing or other review is pending, has become conclusive of all matters adjudicated thereby and is in full force and effect.

**1.31**    "<u>General Bar Date</u>" means August 11, 2023, the date on which all persons and entities (including without limitation, individuals, partnerships, corporations, joint ventures and trusts) that can assert a claim, as defined in section 101(5) of the Bankruptcy Code, against the Debtor that arose prior to the filing of the Chapter 11 petition must have filed a proof of such claim in writing.

**1.32**    "<u>General Unsecured Claim</u>" means a Claim that is not an Administrative Claim, Priority Tax Claim, Secured Claim or Priority Claim including, without limitation, any Claims based upon the rejection of an Executory Contract during the pendency of the Case, and any deficiency claim.

**1.33**    "<u>Guaranty</u>" means the Limited Guaranty dated May 8, 2008 made by Bijan Golyan, Joseph Golyan and Faraidon Golyan to Banco Popular North America.

**1.34**    "<u>Holder</u>" means the legal or beneficial holder of a Claim or Equity Interests (and, when used in conjunction with a Class or type of Claim or Equity Interests, means a holder of a Claim or Equity Interests in such Class or of such type).

**1.35**    "<u>Loan Documents</u>" means the Loan, Note, Mortgage and Guaranty.

**1.36** "<u>Management Agreement</u>" the agreement between the Debtor and its Managing Agent setting forth the terms and conditions of the management engagement.

**1.37** "<u>Managing Agent</u>" means the Debtor's retained real property manager, Bronstein Properties, LLC, or any successor Managing Agent.

**1.38** "<u>Mortgage</u>" means the first mortgage lien on the Property held by RPL.

**1.39** "<u>Net Sale Proceeds</u>" means the gross sale proceeds realized from the auction sale, less the secured liens and expenses of Sale on the Premises, and any Carve-Out. There are no Net Proceeds from the Sale.

**1.40** "Note" means the Amended and Restated Mortgage Note dated May 8, 2008 in the original principal amount of $6,500,000.00.

**1.41** "<u>Person</u>" has the meaning set forth in section 101(41) of the Bankruptcy Code.

**1.42** "<u>Plan Administrator</u>" shall mean Gregory Messer, a neutral third-party.

**1.43** "<u>Plan Supplement</u>" means the compilation of documents, forms and exhibits to the Plan.

**1.44** "<u>Priority Claim</u>" means a Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than: (a) an Administrative Claim; or (b) a Priority Tax Claim.

**1.45** "<u>Priority Tax Claim</u>" means a Claim by a governmental unit that is entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

**1.46** "<u>Pro Rata</u>" means, with respect to the Holder of an Allowed Claim of a particular Class, the same proportion that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims of such Class.

**1.47** "<u>Premises</u>" means the Debtor's real property commonly known as 99-44 62nd Avenue, Rego Park, New York 11374, in the Borough of Queens, Block: 2107, Lot 24.

**1.48** "<u>Receiver</u>" means Joseph N. Misk, the state court appointed temporary receiver of the Premises.

**1.49** "<u>Released Parties</u>" and/or "<u>Exculpated Parties</u>" means the Debtor, the Debtor's Professionals and all of their respective partners, officers, employees, representatives and agents of the Debtor, along with RPL and all of RPL's respective partners, officers, employees, representatives and agents including counsel for RPL.

**1.50** "<u>Reorganized Debtor</u>" means the Debtor following the confirmation of the Plan.

**1.51** "<u>RPL</u>" means Rego Park Lender LLC.

**1.52** "Schedules" means the Debtor's schedules of assets and liabilities filed on May 11, 2023 [Dkt. No. 1] pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007 and all amendments thereto.

**1.53** "Secured Claim" means a Claim secured by a valid, perfected and enforceable lien in assets of the Debtor, to the extent of the value of the interest of the holder of such Secured Claim in such assets as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code or acknowledged by the Debtor in writing or provided for in the Plan.

**1.54** "United States Trustee Fees" means all United States Trustee statutory fees and interest thereon arising under 28 U.S.C. § 1930 and 31 U.S.C. § 3717.

## ARTICLE II

## DESIGNATION OF CLASSES

All Holders of Claims and Equity Interests against or in the Debtor, of whatever kind or nature, whether or not scheduled or liquidated, absolute or contingent, whether Allowed or not, shall be bound by the provisions of the Plan and are hereby classified as follows:

**2.01** <u>**Class 1:**</u>  Class 1 shall consist of the Allowed RPL Secured Claim.

**2.02** <u>**Class 2:**</u>  Class 2 shall consist of all Allowed Secured Tax and Governmental Claims

**2.03** <u>**Class 3:**</u>  Class 3 shall consist of all Allowed General Unsecured Claims.

**2.04** <u>**Class 4:**</u> Class 4 shall consist of Allowed Insider Claims.

**2.05** <u>**Class 5:**</u> Class 5 shall consist of all Allowed Equity Interests.

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims and United States Trustee Fees have not been classified and thus are excluded from the Classes.

## ARTICLE III

## TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN

**3.01** <u>**Class 1:**</u> Class 1 is impaired. The Debtor has expressly waived its rights to file an Objection to the amount of RPL's Pre-petition Claim. RPL's Allowed Secured Claim is deemed to be not less than $10,470,070.00 as of the Petition Date plus accrued interest, costs, and fees. The Plan provides for payment of the Allowed Secured Claim of RPL up to the amount of the Net

Sale Proceeds from the sale of the Premises plus the Debtor's cash on hand, less any "Carve Outs" set forth in the Cash Collateral Order[1] and this Plan.

RPL, pursuant to Bankruptcy Code Section 363(k), credit bid at the auction and was successful bidder for the credit bid amount of $5,000,000.00 plus a cash bid of up to $802,000 for cash payment of Class 2 and Administrative Claims, for a total bid of $5,802,000. The credit bid amount will be applied to reduce RPL's outstanding indebtedness in accordance with the terms of the Loan Documents. RPL's remaining claim is unsecured, however, RPL will subordinate payment of that Unsecured Claim from the Debtor's estate to payment of all the Allowed Class 3 Claims itemized in section 3.03 below in the amount of $6,814, and will Carve -Out from its collateral the payment of $6,814 for all such Allowed Class 3 Claims, without interest.

**Voting:** The Class 1 Claimant is impaired and is eligible to vote on the Plan.

**3.02    Class 2:** Secured Governmental and Tax Claims will be paid in full upon the sale of the Premises within 30 days of the closing with statutory interest.

| Creditor | Claim No. | Secured Claim Value |
|----------|-----------|---------------------|
| New York State Department of Taxation & Finance | 2 | $261.22 |
| New York City Department of Finance | 5 | $511,273.70 |
| NYC Water Board | 6 | $45,729.95 |
| NYC ECB OATH | 7 | $87,199.46 |
| Total | | $644,464.33 |

**Voting**: Class 2 Claimants are unimpaired and not eligible to vote on the Plan.

**3.03    Class 3:** Based on RPL's agreement to subordinate its Class 3 Claim to all other Class 3 Claims, the Debtor anticipates that except for RPL's Class 3 Claim, the General Unsecured Claims, when and if to the extent Allowed, shall receive a 100% distribution, without interest from the Carve-Out of the Sales Proceeds, within 60 days after the Effective Date. The last date for creditors to file claims was August 11, 2023. The Class 3 Claimants are as follows:

| Creditor | Claim No. | Unsecured Claim Value | Pro Rata Dist. |
|----------|-----------|----------------------|----------------|
| Consolidated Edison Company of New York | 1 | $621.89 | 100% |

---

[1] Pursuant to the Carve Out, RPL's adequate protection liens shall be subject to the following, *inter alia*: (i) payments of those fees due to the Office of the United States Trustee, including interest, pursuant to 28 U.S.C. § 1930;  (ii) the payment of allowed professional fees and disbursements incurred by the Debtor's professionals retained by an Order of the Bankruptcy Court, and any statutory committee appointed in this case pursuant to fee orders or any Monthly Compensation Order and the Budget, and in the event of a default that results in the termination of the Debtor's authorization to use cash collateral, unpaid Professional Fees and Disbursements incurred in accordance with the Budget not to exceed the sum of $25,000.00; and (iii) any recoveries in favor of the estate pursuant to Chapter 5 of the Bankruptcy Code and the Secured Claims in Class 2 and any Secured Administrative Claims . As noted above, RPL has agreed to carve-out for all Allowed Unsecured Claims as set forth in Class 3.

| | | | |
|---|---|---|---|
| New York State Department of Taxation & Finance | 2 | $3,600.00 | 100% |
| Internal Revenue Services | 3 | $2,592.19 | 100% |
| Rego Park Lender LLC | 4 | $5,470,070.00 | Subordinate Distribution |
| Total | | $5,476,884.08 | $$6,814.08 |

**Voting:** Class 3 Claimants are impaired, are eligible to vote on the Plan.

**3.04    Class 4:** The Allowed Insider Claims shall receive no distribution under the Plan, this Class is deemed to reject the Plan.

**Voting:** Class 4 Claimants are not eligible to vote on the Plan and are deemed to reject.

**3.05    Class 5:** Equity. Class 5 claimants shall not retain their interests and are deemed to reject the Plan, which includes Claims 9 and 10.

**3.06    Administrative Claims of the Debtor and the Debtor's Professionals:** The Allowed Administrative Claims of the Debtor and the Debtor's Professionals are unimpaired and shall be paid in full by the Debtor within 30 days after the Effective Date or upon the approval of the professional fee application, even if estimates fall below actual awarded amounts or such later date after approval by the Court after notice and a hearing.

| Administrative Claim Holder | Debtor's Professional | Administrative Claim Value |
|---|---|---|
| Law Offices of Avrum J. Rosen, PLLC | Debtor's Counsel | $ 70,000.00[2] |
| Bronstein Properties LLC | Debtor's Managing Agent | $ 26,000.00[3] |

**3.07    Administrative Claims Other than the Debtor and the Debtor's Professionals:** Allowed Administrative Claims (other than Claims of the Debtor and the Debtor's Professionals), to the extent that any such Claims exist, are unimpaired and shall be paid in full by the Debtor within 30 days after the Effective Date. The Debtor anticipates reviewing the alleged administrative claim of the Receiver to determine if the Administrative Claim is Allowed as of the Effective Date.

---

[2] Estimated from the Order Granting First Interim Fee Application, this amount has been reduced by the amount paid on the interim fee application [Dkt. No. 97].

[3] This amount is cumulative of the amount paid monthly pursuant to the retention order in this case as of 12/31/2023 and no amounts are owed.  These fees shall continue to be paid through the closing.

| Administrative Claim Holder | Claim No. | Administrative Claim Value | NOTES |
|---|---|---|---|
| Joseph Misk | 8 | $70,546.07 | Debtor will dispute this claim |
| NYC Water Board | 11 | $75,514.10 | |
| | | | |
| | | | |

**3.08    Priority Tax Claims:**  Allowed Priority Tax Claims pursuant to section 507(a)(8) of the Bankruptcy Code, to the extent that any such Claims should exist, are unimpaired and shall be paid in full by the Debtor as required by section 1129(a)(9) with statutory interest.

| Creditor | Claim No. | Unsecured Priority Claim Value |
|---|---|---|
| New York State Department of Taxation & Finance | 2 | $1,816.19 |
| | | |

**3.09    United States Trustee's Fees:**  The Debtor shall pay all United States Trustee Fees and any applicable interest thereon in full through the date of the entry of the final decree closing this case, or the dismissal or the conversion of this case, whichever happens earlier.

## ARTICLE IV

## MEANS FOR FUNDING AND
## IMPLEMENTATION OF THE PLAN, AND BIDDING PROCEDURES

### 4.01    Plan Funding

The Plan shall be funded through a combination of: (i) sale proceeds from the sale of the Premises; (ii) rents and other amounts that may be collected during the Bankruptcy Case, and (iii) proceeds recovered from any causes of action.

### 4.02    Means for Implementation of the Plan

a)    After the Court enters the Confirmation Order and the sale of the Premises closes, the Plan shall become "effective" (*i.e.*, the Effective Date);

b)    This Plan shall be implemented by the Plan Administrator in a manner consistent with the terms and conditions of this Plan and the Confirmation Order, as follows:

   i.    Post-confirmation, the Property shall be managed, and the Plan shall be implemented, by the Plan Administrator.  The Debtor shall continue to be managed by its members.  The Plan Administrator shall provide access to books and records to the Debtor's members as reasonably necessary to manage the Debtor.

ii.    The Plan Administrator shall be appointed on the Confirmation Date and the Plan Administrator, on behalf of the Debtor, shall take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan.

iii.    Following the Confirmation Date, pursuant to Bankruptcy Code § 1123(b)(3)(B), the Plan Administrator is deemed the representative of the Debtor's estate, except the Debtor (by its interest holders) shall be responsible for the Debtor's tax returns.

iv.    The Plan Administrator shall be responsible for the filing of all post-Confirmation reports required during such periods with the U.S. Trustee and payment of all post-Confirmation fees charged or assessed against the estate under 28 U.S.C. § 1930 during such periods.

v.    The Plan Administrator is authorized to maintain the Debtor's bank accounts and to, *inter alia*, pay bills, make distributions and make other payments in accordance with the Plan and the administration of the post-confirmation estate of the Debtor including, but not limited to, acting as the Disbursing Agent under the Plan.

vi.    The Plan Administrator shall have the exclusive authority to file, settle, compromise, withdraw or litigate to judgment any objections to claims asserted against the Debtor's estate in accordance with the Plan.

vii.    The Plan Administrator shall have the exclusive authority to commence, defend and prosecute and settle any claims and/or Causes of Action in accordance with the Plan.

viii.    The Plan Administrator is authorized to finalize, execute and deliver all agreements, documents instruments and certificates relating to the Plan and to perform all obligations under such agreements, documents instruments and certificates without further notice to, order or approval of the Court.

ix.    The Debtor's privileges, including any attorney-client privilege, shall vest in the Plan Administrator.

x.    The Plan Administrator shall have the authority to control the Debtor's books and records, including any computers and/or electronic data.

xi.    The Plan Administrator may hire professionals as deemed necessary in his/her sole discretion to implement the Plan.

xii.    The Plan Administrator and his/her retained professionals shall be compensated as follows:  The Plan Administrator shall be compensated as follows at an hourly rate of $600. The Plan Administrator may retain counsel at an hourly

rate of $695.  The Plan Administrator may retain an accountant at an hourly rate of $500.  The Plan Administrator may retain additional counsel on a contingency basis to prosecute Causes of Action.

xiii.    the Plan Administrator is authorized to employ a professional third-party managing agent ("Managing Agent").

xiv.    the Managing Agent is authorized to collect all rents and profits due and unpaid or that become due pending the sale of the Property under the Plan.

xv.    The Managing Agent is authorized to take charge and enter into possession of the Property.

xvi.    On behalf of the Plan Administrator, the Managing Agent is authorized to keep the Property insured against loss by damage or fire; to pay the taxes, assessments, water rates, sewer rents, vault rents, salaries of employees, supplies and other charges; to comply with all the lawful requirements of any municipal department or other authority of the municipality in which the mortgaged premises are situated; and to procure such fire, plate glass, liability and other insurance as may be reasonably necessary.

xvii.    On behalf of the Plan Administrator, the Managing Agent is authorized to commence and prosecute all legal proceedings for the collection of rent, including actions for the removal of tenants and licensees.

xviii.    Tenants and occupants shall attorn to the Managing Agent on behalf of the Plan Administrator.

xix.    All persons now or hereafter in possession of the Property, or any part thereof, and not holding such possession under valid and existing leases or tenancies, inclusive of the Debtor, shall surrender such possession to the Managing Agent.

xx.    Pursuant to the provisions of the General Obligations Law section 7-105, anyone holding any deposits or advances or rental as security under any lease or license agreement affecting space in the Property shall turn same over to the Managing Agent within five (5) days; and thereupon the Managing Agent shall hold such security as required under the General Obligations Law.

xxi.    The Debtor or anyone in possession, turn over to the Managing Agent all rents collected relating to the Property.

xxii.    Anyone in possession of same shall turn over to the Managing Agent all property belonging to the Debtor including cash on hand, books and records, rent lists, orders, unexpired and expired leases, agreements, correspondence, notices and registration statements relating to rental space or facilities at the Property.

xxiii.  The Debtor, the Property tenants, licensees or other persons in possession of the Property are enjoined and restrained from collecting the rents, license fees and other charges of the Property and from interfering in any manner with the Property or its possession; and from transferring, removing or in any way disturbing any of the occupants or employees; and that all tenants, occupants; employees and licensees of the premises and other persons liable for the rents be and hereby are enjoined and restrained from paying any rent or license fees or other charges for such premises to the Debtor, its agents servants or attorneys.

xxiv.  The Plan Administrator may apply to the Bankruptcy Court for further or other instructions or powers necessary to enable the Plan Administrator and the Managing Agent to implement the Plan.

xxv.  The Plan Administrator shall be the disbursing agent under the Plan responsible for making distributions under the Plan, and shall file a disbursement report with the Bankruptcy Court upon making such distributions.

xxvi.  The Plan Administrator is authorized to compensate himself/herself and professionals for reasonable fees and expenses incurred in her capacity as Plan Administrator and in their capacity as her professionals without further Order of the Court.

xxvii.  The Plan Administrator shall have such other powers as may be vested in or assumed by the Plan Administrator pursuant to the Confirmation Order or any other Bankruptcy Court order, or as necessary and appropriate to carry out the provisions of the Plan.

xxviii.  The Plan Administrator's duties shall cease upon the closing of this Case.

b)  The Debtor's duly retained broker, MYC & Associates, Inc., has conducted an auction pursuant to the Bidding Procedures set forth in the Bid Procedures Order (ECF Dkt. No. 49);

c)  Until the closing of the Premises occurs, the Debtor's Managing Agent shall continue to manage the Premises and be entitled to its management fee pursuant to the Management Agreement;

d)  The Plan Administrator may continue to investigate claims filed by the Receiver and (i) seek the disallowance of such claims as well as (ii) disgorgement by the Receiver of any amounts already paid to or recovered by the Receiver, and (iii) pursue any and all claims and causes of action of the estate against the Receiver and any other parties, if appropriate and recoverable under statute or case law, for damages and harm to the Premises.  To the extent that the Plan Administrator seeks to implement a settlement of Receiver Action, it must be on notice by way of a motion pursuant to Bankruptcy Rule 9019 and subject to objection, with the

Founding Members having the right to assert that they have standing to object and be heard with respect to same. Should the Plan Administrator seek to dismiss that action, the Founding Members may elect to take over that action and shall have standing to do so in the name of the post-confirmation Debtor.

e)      Prior to the filing date, the Founding Members had commenced litigation, each asserting claims against the other, relating in part to the Debtor.  Some of the claims asserted by the Founding Members relating to the Debtor may be derivative in nature, and inure to the benefit of the estate (the "Founding Members' Litigation"). To the extent that there are claims that have not been paid in full from proceeds of the sale of the Premises and the resolution of the causes of action against the Receiver, the Founding Members may continue such litigation except for derivative claims relating solely to the Debtor in that litigation belonging to the estate.  Such derivative claims relating solely to the Debtor belong to the estate and may be prosecuted by the Plan Administrator, together with any and all causes of action of the estate as is necessary to pay estate claims (the Plan Administrator may, in their sole discretion, choose to permit the Founding Members to continue litigation of the derivative claims relating to the Debtor subject to the Plan Administrator's oversight).  The Plan Administrator will confer with the Founding Members who brought the derivative claims in a good faith effort to determine and agree upon which causes of action are, in fact, claims of the estate.  If the Plan Administrator seeks to dismiss or abandon any derivative claims relating to the Debtor pending in the Founding Members' Litigation, or if the Bankruptcy Court otherwise enters an order permitting it, the Founding Members may continue to prosecute the derivative claims relating to the Debtor in the Founding Members' Litigation for the benefit of the estate to pay claims against the estate.  To the extent that the Plan Administrator seeks to implement a settlement of derivative claims, it must be on notice by way of a motion pursuant to Bankruptcy Rule 9019 and subject to objection, with the Founding Members having the right to assert that they have standing to object and be heard with respect to same.

f)      Exemption from Certain Transfer Taxes and Fees. To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any transfer of the Premises pursuant to the Plan and any mortgage or instrument recorded in connection with such transfer will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents will forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

**4.03    Administrative Expense Bar Date**: A date establishing an Administrative Expense Bar Date will be included as part of the Confirmation Order or by separate Order, which will be served upon all creditors and other parties-in-interest. All requests for payment of

Administrative Expenses that accrued on or before the Confirmation Date must be filed with the Bankruptcy Court by the Administrative Expense Bar Date, except for Professional Fee Claims. Any holder of an Administrative Expense which fails to file a timely request for the payment of an Administrative Expense will forever be barred, estopped and enjoined from asserting such Administrative Expense against the Debtor and Reorganized Debtor. The Plan Administrator, Debtor and RPL may object to the allowance of any Administrative Expense Claim.

**4.04    Professional Fee Claims.** Each Allowed Professional Fee Claim shall be paid in full in Cash on the later of: (a) three days after the Professional Fee Claim is Allowed; and (b) another date on which the holder of the Professional Fee Claim and the Debtor or Reorganized Debtor agree. Each Person seeking an award by the Bankruptcy Court of Professional Fees must file with the Bankruptcy Court and serve on Reorganized Debtor and the United States Trustee's Office its final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by the Professional Fee Bar Date.

**4.05    Vesting of Assets**: On the Effective Date, any assets (if not sold) of the Debtor will revest to the Debtor for distribution under the Plan.

## ARTICLE V

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**5.01    Assumption and Rejection of Executory Contracts and Unexpired Leases:** Except as otherwise provided herein, the Debtor filed a list of assumed and assigned Executory Contracts and Unexpired Leases in the Plan Supplement [Dkt. No. 81] which shall then be deemed either assumed and assigned to the Purchaser of the Property, or rejected pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease: (1) was assumed or rejected previously by the Debtor; (2) expired or terminated pursuant to its own terms before the Effective Date; or (3) is the subject of a motion to reject pending on the Confirmation Date. Entry of the Confirmation Order shall constitute entry of a Final Order approving the assumptions or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code. The Management Agreement is expressly rejected in the Plan pursuant to the terms of the Settlement Agreement.

All assumed Executory Contracts and Unexpired Leases shall remain in full force and effect for the benefit of the assignee, and be enforceable by the assignee in accordance with their terms, notwithstanding any provision in such assumed Executory Contract or Unexpired Lease that prohibits, restricts, or conditions such assumption, assignment, or transfer. Any provision in the assumed Executory Contracts and Unexpired Leases that purports to declare a breach or default based in whole or in part on commencement or continuance of this Chapter 11 Case or any successor cases shall be deemed unenforceable.

As all of the tenants in the building have leases due to their status as statutory tenants, the Debtor believes, that it lacks the power to reject those leases and that the tenants' possessory rights pass through the Bankruptcy case unaffected.   However, to the extent that any tenants have any claims arising out of their lease or statutory tenancy, they shall be required to file a statement of

same withing thirty (30) days of the entry of the Confirmation Order and any such claim shall be treated as a general unsecured claim.

## ARTICLE VI

## LIQUIDATION ANALYSIS

**6.01    Liquidation Analysis:**  As part of the Chapter 11 process, section 1129(a)(7) of the Bankruptcy Code requires that a Bankruptcy Court determine that a Chapter 11 plan provides, with respect to each class, that each holder of a claim or an equity interest in such class either (i) has accepted the plan or (ii) will receive under the plan value that is not less than the amount that such holder would receive if the debtor had liquidated under Chapter 7 of the Bankruptcy Code. In this case, since the Plan is a liquidating Plan which is designed to bring the highest and best price for the Premises, a liquidation analysis is not required and the Debtor will not receive a discharge pursuant to section 1141(d)(3) of the Bankruptcy Code.

## ARTICLE VII

## EFFECT OF CONFIRMATION; INJUNCTION

### 7.01    Binding Nature of Plan

On the Confirmation Date, the terms of the Plan bind all Holders of all Claims against, and Equity Interests in, the Estate, whether or not such Holders accepts the Plan.

### 7.02    Preservation of Causes of Action

Except as otherwise provided herein, the Estate shall retain any and all claims and Causes of Action belonging to the Debtor and its Estate, whether arising before or after the Filing Date, regardless of whether such claims and Causes of Action arise under the Bankruptcy Code.

The Plan Administrator may but is not required to pursue any and all such Causes of Action, including derivative claims asserted in the Founding Members' Litigation, for the benefit of the estate to the extent that Claims remain unpaid. No Entity may rely on the absence of a specific reference in the Plan or in the Disclosure Statement to any Cause of Action against it as any indication that the Plan Administrator will not pursue any and all available Causes of Action against it. Unless any claims and Causes of Action against an Entity are expressly and unambiguously waived, relinquished, exculpated, released, compromised, or settled in the Plan or in a Bankruptcy Court order, the Plan expressly reserves all Causes of Action, for later prosecution, settlement, or adjudication and no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or a consequence of entry of the Confirmation Order, occurrence of the Effective Date, or consummation of the Plan.

**7.03    Confirmation Injunction**

Effective on the Effective Date, all Persons/Entities who have held, hold or may hold Claims or Equity Interests[4] are enjoined from taking any of the following actions except for the reservation of rights of all claims and actions expressly reserved in the agreement dated March 31, 2023, as to claims reserved between the Founding Members of the Debtor (i.e., the Founding Members' Litigation), and its exhibits [Dkt. No. 9], against or affecting the Released Parties, the Debtor, the Estate, the Premises or any other assets of the Estate with respect to such Claims or Equity Interests, except as otherwise set forth in the Plan and other than actions brought to enforce any rights or obligations under the Plan or appeals, if any, from the Confirmation Order:

(a) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against the Debtor, the Estate, the Premises, or any other assets of the Estate;

(b) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree, or order against the Debtor, the Estate, the Premises or any other assets of the Estate;

(c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the Estate, the Premises or any other assets of the Estate;

(d) asserting any set-off, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation against the Debtor, the Estate, the Premises or any other assets of the Estate; and/or

(e) proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan.

**7.04    Release**

Except as otherwise set forth herein, the Plan provides that, effective as of the Effective Date, the Released Parties are released from all Claims, Causes of Action, and demands of any nature whatsoever, in law and in equity, that any creditor of the Debtor had, has, or may hereafter have against the Released Parties arising prior to the Effective Date. Except as otherwise provided herein and in section 1141 of the Bankruptcy Code, all Persons shall be precluded and enjoined from asserting against the Released parties, their assets or properties, or against any property that is distributed, or is to be distributed under the Plan, any other or further Claim upon any acts or omissions, transactions, or other activity of any kind or nature that occurred prior to the Effective Date. Any claims that may exist in favor of a Founding Member against another Founding Member, are expressly reserved and are not released pursuant to the Plan.  Any personal guarantee claims that RPL may assert against Released Parties (including but not limited to any Founding Member) pursuant to the Loan Documents are expressly reserved and not released pursuant to the

---

[4] This Plan shall not in any way or to any degree release any claims or rights of any Founding Member against the other.

Plan, and any claims that a Founding Member may have against RPL are not released pursuant to the Plan.

Nothing in this section shall: (a) affect the liability of any Released Party that otherwise would result from any act or omission to the extent that the act or omission is determined in a Final Order to have resulted from fraud, willful misconduct, gross negligence, or criminal conduct; or (b) limit liability for malpractice pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct; (c) modify the terms of the Sale Stipulation; (d) affect the reservation of rights expressly reserved in the agreement dated March 31, 2023, and its exhibits [Dkt. No. 9], (e) affect personal guarantee claims that RPL may assert against Released Parties, or (f) Causes of Action the Debtor's Estate may assert against Released Parties.

### 7.05    Exculpation

The Plan provides that the Released Parties (collectively, the "Exculpated Parties") will not have or incur any liability to any Person for any act taken or omission occurring on or after the Filing Date in connection with this Case, including but not limited to:

      (a)      the commencement and administration of the Case;

      (b)      the formulation, preparation, dissemination, implementation, confirmation, consummation, or administration of: (i) the Plan (including soliciting acceptances or rejections thereof); and/or (ii) the Disclosure Statement; and

      (c)      any Distributions made pursuant to the Plan.

Nothing in this section shall: (a) affect the liability of any Exculpated Party that otherwise would result from any act or omission to the extent that the act or omission is determined in a Final Order to have resulted from fraud, willful misconduct, gross negligence, or criminal conduct; or (b) limit liability  for malpractice pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct; (c) modify the terms of the Sale Stipulation; (d) affect the reservation of rights expressly reserved in the agreement dated March 31, 2023, and its exhibits [Dkt. No. 9], (e) affect personal guarantee claims that RPL may assert against Released Parties, or (f) Causes of Action the Debtor's Estate may have against Released Parties.

### ARTICLE VIII

### CLAIM AND DISTRIBUTION MATTERS

### 8.01    Allowance of Claims

All Claims in this Case except RPL's Claim will be reviewed, and to the extent necessary and appropriate, the Debtor, Plan administrator or RPL may file objections to certain Claims. The Bankruptcy Court will retain jurisdiction to adjudicate objections to Claims, including any settlements or compromises of such Claims. All  rights to object to Claims are reserved.

Any creditor who failed to file a proof of claim on or before the General Bar Date and was not listed on the Schedules, or was listed on the Schedules as "disputed," "contingent" or

"unliquidated," cannot be treated as a creditor with respect to such Claim for purposes of voting on and receiving a Distribution under the Plan.

### 8.02    Time to File Objections to Claims

Objections to Claims, to the extent not already filed, must be filed and served no later than the sixtieth (60th) day after the Effective Date (or the next business day if the 60th day is a holiday or weekend day), or within such other extended time period as may be requested (with such application or motion being made prior to the expiration of the period) and fixed by the Bankruptcy Court.

### 8.03    Reserve for Disputed Claims

The Plan Administrator shall hold in reserve, at a banking institution that is an authorized depository in the Eastern District of New York: (a) 100% of any Disputed Claim that is an Administrative Claim or a Priority Claim; and/or (b) the Pro Rata portion of the General Unsecured Claims Reserve of any Disputed Claim that is a General Unsecured Claim until such Claim is resolved by a Final Order or settled. Should the amount reserved by the Debtor on account of the Disputed Claim exceed the amount required to satisfy the Disputed Claim, any excess will be distributed in accordance with the Plan.

### 8.04    Allowance of Disputed Claims

If, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, the Plan Administrator shall within fifteen (15) days after the later of: (x) the date on which the Claim becomes an Allowed Claim, and (y) when claims in the same Class are paid, or as soon thereafter as is practicable, pay to the Holder of such Allowed Claim the amount that such Holder would have been entitled to receive under the Plan if such Claim had been an Allowed Claim on the Effective Date.

### 8.05    Distribution Cap

Notwithstanding any language to the contrary herein, no Holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of that Claim.

### 8.06    Undeliverable or Unclaimed Distributions

All Distributions under the Plan to any Holder of an Allowed Claim shall be made at the address of such Holder as set forth in the filed or scheduled Claim unless the Debtor has been notified in writing of a change of address. For a period of ninety (90) days subsequent to any Distributions made under the Plan, Unclaimed Property will be held by the Plan Administrator for the Holders of Allowed Claims which have failed to claim such Distribution, and will be released by the Plan Administrator and delivered to such Holder, without interest, upon presentation and proper proof by such Holder to the Plan Administrator (in the sole and absolute discretion of the Plan Administrator) of its entitlement thereto.

At the end of the ninety (90) days subsequent to any Distributions made under the Plan, all Unclaimed Property will be deposited by the Plan Administrator (as applicable) with the Clerk of the Court, notwithstanding any provision to the contrary in the Plan, or any federal or state escheat laws to the contrary.

### 8.07    Manner of and Minimum Distributions

If a Distribution to be made to a given Holder of an Allowed Claim would be $5.00 or less, notwithstanding any contrary provision of the Plan, the Plan Administrator shall not be required to make such Distribution to such Holder. Any unclaimed or retained Distributions shall be disbursed by the Debtor pursuant to the terms of the Plan. Distributions may be made by the Debtor by wire, electronic transfer, check or such other method as the Debtor deems appropriate under the circumstances.

### 8.08    Rounding to the Nearest Dollar

Any other provision of the Plan to the contrary notwithstanding, no payments of portions of a Dollar will be made. Whenever any payment of a portion of a Dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole Dollar (up or down).

### 8.09    Withholding of Taxes

The Plan Administrator may but is not required to withhold from any Distribution under the Plan any amount which must be withheld for taxes payable by the Entity entitled to such Distribution to the extent required by applicable law. As a condition to making any Distribution under the Plan, the Debtor may request that the Holder of any Allowed Claim provide such Holder's taxpayer identification number and such other certification as may be deemed necessary to comply with applicable tax reporting and withholding laws.

Notwithstanding any other provision of the Plan, each Entity receiving a Distribution pursuant to the Plan will have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any governmental unit on account of such Distribution, including income, withholding and other tax obligations.

## ARTICLE IX

## RETENTION OF JURISDICTION

### 9.01    Bankruptcy Court Jurisdiction

Notwithstanding entry of the Confirmation Order, occurrence of the Effective Date, substantial consummation of the Plan, the Case having been closed, or a final decree having been entered, the Bankruptcy Court (or the United States District Court for the Eastern District of New York, as the case may be) shall have and retain exclusive jurisdiction of matters arising out of, and

related to the Case and the Plan under, and for the purposes of, sections 105(a), 1127, 1142 and 1144 of the Bankruptcy Code and for, among other things, the following purposes:

(a) to hear and determine all Claims (including Administrative Claims) concerning the classification, allowance or disallowance of any such Claim, if any;

(b) to hear and determine any and all adversary proceedings, Causes of Action, claims of the Estate, applications, and contested matters, including any motion to appoint a successor Plan Administrator, whether filed or commenced before or after the Effective Date;

(c) to hear and determine all Claims arising out of any agreement entered into by the Plan Administrator after the Filing Date, if any;

(d) to hear and determine applications for the assumption or rejection of Executory Contracts, if any, and allowance of Claims resulting therefrom;

(e) to hear and determine any settlement and/or compromise pursuant to Bankruptcy Rule 9019 concerning any of the foregoing;

(f) to alter, modify and amend the Plan pursuant to section 1127 of the Bankruptcy Code, or to remedy any defect, cure any omissions or reconcile any inconsistency in the Plan or Confirmation Order as may be necessary or advisable to carry out the purpose and intent of the Plan and to the extent authorized by the Bankruptcy Code or Bankruptcy Rules;

(g) to make such orders *ex parte* or upon application, and to hear and adjudicate any settlements or disputes concerning the provisions of the Plan, or to enforce and/or implement the terms of the Plan;

(h) to hear and determine such other matters as may be provided for in the Confirmation Order of the Bankruptcy Court, and for the purposes set forth in section 1127(b) and section 1142 of the Bankruptcy Code or as contained in Rules 1019 and 3020(d) of the Bankruptcy Rules;

(i) to hear and determine all applications for compensation;

(j) to hear and determine matters concerning local, state and federal taxes in accordance with sections 345, 505 and/or 1146 of the Bankruptcy Code;

(k) to enter a Final Order or decree concluding the Case or an order of substantial consummation;

(l) to hear and determine that distributions are accomplished as provided in the Plan; and/or

(m) to determine other matters contained in the Confirmation Order or Plan or that is authorized under the provisions of the Bankruptcy Code including, without limitation, to hear and determine matters pertaining to the Sale of the Property.

## ARTICLE X

## GENERAL PROVISIONS

### 10.01   Headings

The headings used in the Plan are inserted for convenience or reference only and neither constitute a portion of the Plan nor in any manner affect the provisions or interpretations of the Plan.

### 10.02   Interpretation; Application of Definitions; Rules of Construction

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained therein. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) unless otherwise specified, all references herein to "Sections" are references to Sections hereof or hereto; (d) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (e) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

### 10.03   Controlling Documents

In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, the provisions of the Plan shall control and take precedence.

The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided that, if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

### 10.04    Section 1125(e) of the Bankruptcy Code

Confirmation of the Plan will constitute a finding that the Debtor (and the Debtor's Professionals, agents, employees and advisors) have proposed and solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

### 10.05    Successors and Assigns

The rights and obligations of any Entity named or referred to in the Plan will be binding upon, and shall inure to the benefit of, the successors and assigns of such Entity.

### 10.06    Notices

Notices will be deemed given when received. All notices, requests or demands described in or required to be made in accordance with the Plan must be in writing and must be delivered personally or by registered or certified mail, return receipt requested, to:

<u>If to the Debtor, then to:</u>

Golyan Enterprises, LLC
287 Northern Blvd
Suite 110
Great Neck NY 11021-4717
Attn: Daniel Golyan, Manager

-and-

Golyan Enterprises, LLC
c/o Law Offices of Avrum J. Rosen, PLLC
38 New Street
Huntington, New York 11743
Attn: Avrum J. Rosen, Esq.
Telephone: (631) 423-8527

### 10.07    Change of Address

The Debtor may change the address at which it is to receive notices under the Plan by filing a notice of Debtor's address change on the electronic case docket.

### 10.08    Post Confirmation Reporting

The Debtor shall file quarterly status reports after the Plans' Effective Date until the Chapter 11 case is closed. The quarterly reports will be prepared using forms promulgated pursuant to 28 CFR § 58.8 and filed by the 20th day after the conclusion of the relevant reporting quarter, until the closing of the case via a final decree, dismissal, or conversion, whichever happens earlier.

### 10.09    Notice of Entry of Confirmation Order

Notice of Entry of the Confirmation Order shall be sufficient if a copy of a notice indicating that said order has been entered by the Bankruptcy Court, without attaching said order, is mailed or emailed to those Persons who had filed a notice of appearance and request for service of process in the Case and to Persons who file a new notice of appearance and demand for service of process dated subsequent to the Confirmation Date.

### 10.10    Final Decree

Within 14 days following the full administration of the estate, but not later than 18 months following the entry of the order confirming a plan, the Debtor shall file, on notice to the United States Trustee, an application and a proposed order for a final decree pursuant to Bankruptcy Rule 3022.

### 10.11    Effective Date Notice

Within three business days of the occurrence of the Effective Date, the Debtor will file with the Court a notice of the Plan's Effective Date.

### 10.12    Effectuating Documents and Further Transactions

The Debtor shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements and take such other actions as may be necessary or desirable to effectuate and further evidence the terms and conditions of the Plan. All Holders of Claims or Equity Interests, including those receiving Distributions under the Plan, shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### 10.13    Governing Law

Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York.

### 10.14    Severability

In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of the Plan is invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and

provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 10.15  No Admissions

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by the Debtor with respect to any matter set forth herein, including, without limitation, liability on any Claim or the propriety of a Claim's classification.

### 10.16  Entire Agreement

Except as otherwise indicated, the Plan and the Confirmation Order supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

### 10.17  Binding Effect of Plan

Upon the Effective Date, all of the provisions of the Plan shall be binding on the Debtor, on all Holders of Claims, and on all other Entities who are affected (or whose interests are affected) in any manner by the Plan.

### 10.18  References

Unless otherwise specified, all references in the Plan to sections and Articles are to sections and Articles of the Plan.


## ARTICLE XI

## AMENDMENTS, MODIFICATIONS AND REVOCATION

### 11.01  Amendment and Modification of Plan

The Debtor reserves the right, in accordance with section 1127 of the Bankruptcy Code, and with the written consent of RPL (as to any modifications materially affecting RPL's treatment under the Plan) and by notice and an opportunity to object, to amend or modify the Plan provided the Bankruptcy Court approves such modification, if required.

### 11.02  Revocation and Withdrawal Prior to Confirmation

The Debtor may, with the written consent of RPL, withdraw or revoke the Plan prior to the Confirmation Date. If such a withdrawal or revocation occurs, or if Confirmation does not occur, the Plan will be null and void. In such event, nothing contained in the Plan will constitute a waiver or release of any Claim by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtor.

Dated: February 26, 2024
      Huntington, New York

**Law Offices of Avrum J. Rosen, PLLC**

By:    *_s/Avrum J. Rosen____*
      Avrum J. Rosen, Esq.
      Nico G. Pizzo, Esq.
      38 New Street
      Huntington, New York 11743
      Tel: (631) 423-8527
      arosen@ajrlawny.com
      npizzo@ajrlawny.com

      *Counsel to Golyan Enterprises, LLC*
      *Debtor and Debtor-in-Possession*

Dated: February 26, 2024
      Great Neck, New York

By:    */s/ Faraidoon Daniel Golyan*
      Faraidoon Daniel Golyan
      Manager of Golyan Enterprises, LLC